UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ELKO, INC., d/b/a COACH USA (NV),<br><br>Plaintiff,<br>v.<br>COREY PETERS, *et al*.,<br><br>Defendants. | Case No. 3:22-cv-00015-MMD-CLB<br><br>ORDER |

**I.      SUMMARY**

Plaintiff Elko, Inc. ("Coach Elko") sued Defendants[1] for stealing its trade secrets and confidential information and using that information to unfairly compete with Coach Elko in the Nevada market. (ECF No. 4 at 3-4.) Before the Court are Coach Elko's motions for temporary restraining order ("TRO") and preliminary injunction ("PI") ("Motions"),[2] which request that the Court enjoin Defendants from misappropriating its trade secrets, soliciting and providing services to Coach Elko's customers, and using Coach Elko's copyrighted work. (ECF Nos. 4 at 24, 5 at 24.) Coach Elko also requests the return of documents and devices, including an external hard drive, that contain its confidential information, and Defendants' preservation of case-related evidence. (*Id*.) Because Coach

---

[1]Coach Elko brought this action against WTH Commercial Services, LLC ("WTH Commercial"); Wynne Transportation, LLC ("Wynne"); Wynne Transportation Holdings, LLC ("Holding Company"); Coastal Crew Change Company, LLC ("Coastal"); Mountain Crew Change Company ("Mountain Crew"); Gemini Investors, Inc. ("Gemini"); John Montgomery; and Matthew Keis. (ECF No. 3 at 1-2 (collectively "Corporate Defendants").) Coach Elko also sued two of its former employees, Corey Peters and Yolanda Perez. (*Id*.)

[2]Corporate Defendants filed a response (ECF No. 17) to the Motions, and Peters and Perez filed a joinder (ECF No. 19) to the response. Coach Elko's TRO and PI motions are identical. (ECF Nos. 4, 5.)

Elko failed to satisfy the *Winter* factors, and because the requested injunctive relief is premised on mere speculation, the Court will deny Coach Elko's Motions.

## II. BACKGROUND

Coach Elko is a subsidiary of Coach USA and provides transportation services to employees of Nevada's mining companies in the Elko and Winnemucca area. (ECF No. 4 at 4.) Defendants are WTH Commercial, a subsidiary of the Holding Company, that similarly provides ground transportation services to mining companies in Nevada and surrounding states; the Holding Company, WTH Commercial's parent corporation; Coastal, another subsidiary of the Holding Company that provides transportation services to companies in the Gulf Coast region; Gemini, an investor of the Holding Company; John Montgomery, the president and CEO of the Holding Company; Matthew Keis, the general partner and managing member of Gemini; and Corey Peters and Yolanda Perez, former employees of Coach Elko.[3] (ECF Nos. 4 at 10, 17 at 10, 12-13.)

Coach Elko alleges that Peters, the company's former Vice President and General Manager, and Perez, the former Director of Operations, stole Coach Elko's trade secrets and confidential information, and have been misappropriating these trade secrets, in violation of their confidentiality agreements and company policy. (ECF Nos. 4 at 3-4, 17, 4-2 at 3, 6.) Coach Elko specifically accuses Peters of downloading and sending files about Coach Elko's "internal marketing and sales strategies, operational plans, correspondence regarding bids and requests for proposals, pricing spreadsheets, and pricing formulas" to his personal email for two years before his resignation. (ECF Nos. 4 at 3, 6, 27, 4-2 at 5, 8.) He also allegedly took a hard drive that contained confidential files

---

[3]Coach Elko also named Mountain Crew Change Company and Wynne Transportation as Defendants in this lawsuit. (ECF No. 3 at 1-2.) According to Corporate Defendants, Mountain Crew is unincorporated, and will become the trade name for WTH Commercial. (ECF No. 17 at 10, 22.) Wynne Transportation "is a Delaware limited-liability company headquartered in Texas." (*Id*. at 10.) Corporate Defendants maintain that "Holding Company is the sole member of Coastal Crew, Wynne Transportation, and WTH Commercial." (*Id*.)

about Coach Elko's operating procedures, pricing rates and strategies, profits and losses, and employee and customer contact information. (ECF No. 4 at 7.) Peters resigned from Coach Elko in June 2021 and began working for Holdings Company, and Perez left Coach Elko in July 2021 and began working for WTH Commercial. (ECF Nos. 4-2 at 6-8, 17 at 15.) Coach Elko accuses Defendants of using Coach Elko's proprietary and confidential trade secrets, acquired through Peters and Perez, to poach Coach Elko's customers, and engage in unfair competition. (ECF No. 4 at 3.) According to Coach Elko, Defendants have already stolen one of its long-time customers, Customer One, and is currently soliciting other customers. (*Id*. at 11.)

Coach Elko subsequently initiated this lawsuit against Defendants and filed *ex parte* motions for a TRO and PI on January 10, 2022. (ECF Nos. 4, 5.) Coach Elko requests preliminary injunctive relief on the basis of five claims: trade secret misappropriation under Nevada's Uniform Trade Secrets Act and the Defend Trade Secrets Act (against all Defendants); breach of contract (against Defendants Perez and Peters); copyright infringement (against Defendants Wynne Commercial, Wynne, and Holding Company); intentional interference with business relationships (against all Defendants); and civil conspiracy (against all Defendants).[4] (ECF No. 4 at 14-21.)

On January 11, 2022, the Court issued a minute order denying the part of Coach Elko's Motions that requested *ex parte* relief because Coach Elko failed to demonstrate sufficient grounds for such relief. (ECF No. 8.) Coach Elko then filed an emergency motion for reconsideration and an emergency motion for an expedited briefing schedule. (ECF Nos. 10, 11.) The Court denied the motion for reconsideration but granted the motion for expedited briefing. (ECF No. 12.) On January 21, 2022, the Court held a video hearing ("Hearing") on Coach Elko's Motions. (ECF No. 29.)

///

---

[4]Coach Elko's Complaint has twelve causes of action, but Coach Elko only bases its request for injunctive relief on five of those claims. (ECF Nos. 3 at 19-34, 4 at 14-21.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 65 governs preliminary injunctions and temporary restraining orders. The standard for issuing a TRO is "substantially identical" to the standard for issuing a PI. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). Thus, to obtain a TRO or PI, a plaintiff must show: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in their favor; and (4) that an injunction is in the public interest. *See Winter v. Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008).

However, the Ninth Circuit has adopted a "sliding scale" approach, where the Court may issue an injunction if "the likelihood of success is such that serious questions going to the merits were raised and the balance of hardships tips sharply in [plaintiff's] favor," assuming the moving party also establishes the other two *Winter* factors. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011) (quotation marks and citations omitted). Nevertheless, the moving party must show "at an irreducible minimum" that there is "a fair chance of success on the merits, or questions serious enough to require litigation." *Pimentel v. Dreyfus*, 670 F.3d 1096, 1111 (9th Cir. 2012) (citations omitted). Moreover, "[a]n injunction is a matter of equitable discretion and is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Earth Island Inst. v. Carlton*, 626 F.3d 462, 469 (9th Cir. 2010) (quotation marks and citations omitted).

## IV. DISCUSSION

When applying the *Winter* factors, a likelihood of success on the merits is the "minimum" that Coach Elko must demonstrate unless Coach Elko can meet the "sliding scale" approach. *See Pimentel*, 670 F.3d at 1111; *Cottrell*, 632 F.3d at 1131-32. The Court will accordingly examine whether Coach Elko's claims are likely to succeed on the merits. The majority of Coach Elko's claims are premised on either (1) Peters' possession

of Coach Elko's confidential information, or (2) Defendants' use of that information to solicit and poach Coach Elko's customers. The Court will accordingly examine each category in turn and will then evaluate whether irreparable harm, balance of the equities, and public policy warrant the granting of an injunction. As Coach Elko has failed to so show, and as further explained below, the Court will deny the Motions.

### I. Copyright Infringement

To start, Coach Elko argues that Defendants committed copyright infringement by copying its website, almost word for word. (ECF No. 4 at 18-19.) However, proper registration of the copyright is "a precondition to filing an action for copyright infringement." *Unicolors, Inc. v. H&M Hennes & Mauritz, L.P.*, 959 F.3d 1194, 1197 (9th Cir. 2020) (citations omitted). Coach Elko admitted during the Hearing that it did not formally register the copyright and has not submitted any evidence of registration. (ECF No. 29.) Coach Elko is therefore not likely to succeed on the merits of this claim and the Court declines to grant Coach Elko preliminary injunctive relief for copyright infringement. (ECF No. 29.) *See Pimentel*, 670 F.3d at 1111 (requiring plaintiffs to show "at an irreducible minimum" that there is "a fair chance of success on the merits" for their claim); *see also Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (requiring that the Court tailor the injunctive relief "to remedy the specific harm alleged").

### II. Possession of Coach Elko's Trade Secrets and Confidential Information

The Court will next address the merits of Coach Elko's trade secret misappropriation[5] claim—the only claim that is premised, in part, on Peters' receipt and possession of Coach Elko's trade secrets. Coach Elko argues that Defendants violated

---

[5]Coach Elko argues for misappropriation on two bases—Peters' improper acquisition and possession of its trade secrets, and Defendants' improper use and disclosure of those trade secrets without Coach Elko's consent. (ECF No. 4 at 14-16.) The Court will address the former basis first.

5

Nevada's Uniform Trade Secrets Act ("UTSA") and the Defend Trade Secrets Act ("DTSA") because he "took, transferred and/or accessed Coach Elko's confidential and proprietary information and trade secrets" without the company's consent.[6] (ECF No. 4 at 16.) Corporate Defendants counter that Coach Elko cannot "establish [Peters] improperly acquired that information" and the allegations are based on "conclusory, unverified statements." (ECF No. 17 at 38.) The Court agrees with Coach Elko.

To prevail on a trade secret misappropriation claim under the UTSA, a plaintiff must show: "(1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). To prevail on a trade secret misappropriation claim under the DTSA, the plaintiff must demonstrate "(1) that [they] possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657-58 (9th Cir. 2020) (citing 18 U.S.C. § 1839(5)).

In the Motions, Coach Elko characterizes its trade secrets as "internal marketing and sales strategies, operational plans, correspondence regarding bids and requests for proposals, pricing spreadsheets, and pricing formulas." (ECF No. 4 at 15.) The Court is not convinced that all of these components are trade secrets, particularly since Corporate Defendants demonstrated that some of the pricing and sales information may be publicly available or industry standard. (ECF Nos. 17 at 11, 15-17, 18-4 at 63-76.) *See*

---

[6]Coach Elko does not allege that Perez also sent confidential information or trade secrets to her personal email. (ECF Nos. 4 at 8, 29.) Coach Elko's allegations against Perez seem to be premised on her prior knowledge of Coach Elko's customers due to her position at the company and her prior access to Coach Elko's trade secrets. (ECF No. 4 at 8.)

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) (noting that "[i]nformation that is public knowledge or that is generally known in an industry cannot be a trade secret").

Nevertheless, the Court will assume that some of these components are trade secrets and will evaluate whether Defendants misappropriated them. Under the UTSA and DTSA, simply acquiring a trade secret through improper means constitutes misappropriation. *See* NRS § 600A.030(2)(a) (defining misappropriation as the "[a]cquisition of the trade secret of another by a person by improper means"); 18 U.S.C. § 1839(5)(A) (defining misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"). Peters admitted in his declaration and during the Hearing that he sent Coach Elko's confidential and proprietary information to his personal email for two years, failed to return this information upon his resignation, and is in current possession of this information. (ECF Nos. 17 at 19, 18-2 at 7-8, 29.) His actions violated Coach Elko's company policies and expressly breached his confidentiality agreement, which required the relinquishment of confidential documents upon cessation of employment. (ECF Nos. 4-5 at 3, 4-7 at 6, 4-8 at 2.) Peters' conduct therefore constitutes misappropriation under DTSA and UTSA.

Since the misappropriation was made in breach of Peters' confidentiality agreement, the misappropriation was also wrongful under the UTSA. (ECF No. 4-5 at 3.) *Frantz*, 999 P.2d at 358. Finally, the misappropriation threatens damage to Coach Elko, since Peters is still in possession of this sensitive information while working for Coach Elko's competitor. (ECF No. 4 at 16.) *See InteliClear*, 978 F.3d at 657-58. Coach Elko is therefore likely to succeed on its trade secret misappropriation claim, to the extent the

claim is premised on Peters' receipt and possession of Coach Elko's confidential information.[7] See *Pimentel*, 670 F.3d at 1111.

### III. Use and Disclosure of Confidential Information and Trade Secrets

The Court will evaluate the merits of Coach Elko's remaining claims that are premised on Defendants' use and disclosure of Coach Elko's confidential information to acquire customers. The claims include trade secret misappropriation, tortious interference, breach of contract, and civil conspiracy

To start, Coach Elko contends that Defendants misappropriated the company's trade secrets by using its non-public, proprietary information to solicit customers and has already successfully poached one customer. (ECF No. 4 at 4, 11.) Defendants adamantly deny this allegation and maintain that they have independently developed their own business and sales models. (ECF Nos. 17 at 15, 18-1 at 6.) The Court agrees with Defendants.

Under the UTSA and DTSA, misappropriation includes the improper use or disclosure of another's trade secret without consent. *See* NRS § 600A.030(2)(c); 18 U.S.C. § 1839(5)(B). Coach Elko has failed to demonstrate misappropriation, through use or disclosure, for the following reasons. First, Peters provides valid reasons for sending documents to his personal email, citing technology and connection issues that stemmed from the COVID-19 pandemic and working from home. (ECF Nos. 17 at 19, 18-2 at 7-8.) Peters denies using the information he sent himself for "any purpose other than Coach Elko business," disclosing this information to Corporate Defendants, or scheming with co-Defendants to purposely steal Coach Elko's trade secrets. (*Id*.) In fact, Peters outlined his interactions with Customer One, and described his use of public resources to locate the appropriate personnel at the company, without the assistance of Coach Elko's trade

---

[7]While the Court addresses claims based on possession of Coach Elko's confidential information, the preliminary relief requested for the return of such information is rendered moot in any event by Defendants' agreement to arrange for the return and/or destruction of such information. (ECF No. 29.)

secrets. (ECF No. 18-2 at 9-10.) The record therefore does not support Coach Elko's contention that Peters used or disclosed the confidential information in his possession.

Second, Corporate Defendants provide alternative reasons for their successful acquisition of customers—reasons independent of any misappropriation of Coach Elko's trade secrets. Defendants maintain that their business model and "superior sales and marketing efforts" have helped them gain customers. (ECF No. 17 at 14.) According to Corporate Defendants, their business models are independently developed by senior leadership, who have extensive experience in the transportation industry, third-party consultants and contractors, publicly accessible data, industry standards, and using the successful business model from Coastal, the Holding Company's other subsidiary. (ECF Nos. 17 at 13, 18-1 at 6-8.) Defendants also suggest that Customer One voluntarily left Coach Elko due to the company's poor customer service. (ECF Nos. 17 at 17-18, 18-2 at 10.)

Finally, Coach Elko fails to provide the Court with any evidence that Defendants are using its trade secrets and confidential information to poach customers, or that Peters actually disclosed Coach Elko's trade secrets to Corporate Defendants. (ECF No. 4 at 14-16.) Instead, Coach Elko is asking the Court to *infer* these actions by the mere fact that Peters possesses some of the company's confidential information. (ECF Nos. 4 at 14-16, 29.) In the absence of additional evidence, the Court declines to make this inference and finds that Coach Elko's claim is based on pure speculation. Coach Elko is therefore unlikely to succeed on the merits of its misappropriation claim, to the extent it is premised on Defendants' use and disclosure of Coach Elko's trade secrets. *See* NRS § 600A.030(2)(c); 18 U.S.C. § 1839(5)(B).

Because Coach Elko cannot show that Defendants used its confidential and proprietary information to solicit and acquire customers, Coach Elko's other claims that

are premised on this argument—tortious interference,[8] breach of contract,[9] and civil conspiracy[10]—necessarily fail as well.

## IV. Irreparable Harm

Coach Elko argues that it is entitled to preliminary injunctive relief because it has and will suffer irreparable harm from Defendants' misappropriation of its trade secrets. (ECF No. 4 at 21-22.) Coach Elko cites to "loss of goodwill, destruction of trade secrets, loss of client confidentiality," competitive disadvantage, and disruption of contractual relationships as examples of irreparable harm. (*Id*.) Defendants argue that Coach Elko's delay in seeking preliminary relief and its failure to provide evidence that Defendants used its trade secrets indicate a lack of irreparable harm. (ECF No. 17 at 27-28.) The Court agrees with Defendants.

A moving party must show that "irreparable injury is likely in the absence of an injunction," rather than the mere "possibility of some remote future injury." *Winter*, 555

---

[8]Coach Elko cannot show that Defendants intended to harm or disrupt its business relationships. *See Leavitt v. Leisure Sports Inc.,* 734 P.2d 1221, 1225 (Nev. 1987) (including as an element of wrongful interference "the intent to harm the plaintiff by preventing the [prospective business] relationship"); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (including as an element of intentional interference, "intentional acts intended or designed to disrupt the contractual relationship"). As mentioned above, Coach Elko failed to present any evidence that Defendants schemed to steal its trade secrets, or that they were using the company's confidential information to solicit and acquire customers. Peters characterized his failure to return confidential documents as an unintentional "oversight." (ECF No. 29.)

[9]During the Hearing, Coach Elko admitted there was nothing in the confidentiality agreements that prohibited Peters or Perez from working for a competitor or contacting customers. (ECF No. 29.) Coach Elko specifically takes issue with Peters' and Perez's alleged use of its confidential information to solicit customers, and argues for breach on that basis. (ECF Nos. 4 at 17, 29.) However, as discussed above, Coach Elko failed to provide any evidence to support that Peters and Perez disclosed its trade secrets or that they used this information to solicit customers.

[10]Since Coach Elko cannot show any collaboration or scheming amongst Defendants to steal and use its trade secrets, the civil conspiracy claim likewise fails. *See Consol. Generator-Nev., Inc. v. Cummins Engine Co., Inc.*, 971 P.2d 1251, 1256 (Nev. 1998) (noting that civil conspiracy requires the "combination of two or more persons who, by some concerted action, intend to accomplish an unlawful objective for the purpose of harming another, and damage results from the act or acts").

U.S. at 22 (citations omitted). A "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm," and may be a factor that the Court considers in the irreparable harm analysis. *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (citations omitted).

Coach Elko failed to demonstrate irreparable harm for the following reasons. First, Coach Elko fails to quantify or specify any harms that stem exclusively from Peters' possession of its confidential documents.[11] (ECF No. 4 at 21-22.) Instead, the irreparable harms Coach Elko lists seem to be premised on Defendants' use and disclosure of their confidential information. (*Id.*) As discussed above, Coach Elko offers no evidence that the loss of customers and business were due to Defendants' use and disclosure of its trade secrets. (ECF No. 4 at 14-16.) Instead, the record suggests that customers may have left due to dissatisfaction with Coach Elko's service—a reason independent of any purported misappropriation by Defendants. (ECF Nos. 17 at 17-18, 18-2 at 10.)

Moreover, despite Peters and Perez resigning from Coach Elko in June and July of last year, Coach Elko waited until January 2022 to file its Complaint. (ECF No. 17 at 12.) This delay undermines Plaintiff's argument that there is immediate and imminent irreparable harm, in the absence of an injunction. (ECF No. 4 at 21-22.) *See Winter*, 555 U.S. at 22; *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (noting that a plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm"). Coach Elko therefore failed to demonstrate irreparable harm in the absence of preliminary relief. *See Winter*, 555 U.S. at 20.

### V.     Balance of Equities and Public Policy

In determining whether to grant preliminary injunctive relief, the Court "must balance the competing claims of injury and must consider the effect on each party of the

---

[11]More important is that the preliminary relief requested relating to possession of Coach Elko's confidential information is rendered moot. The Court thus declines to further analyze this factor as it relates to Defendants' possession of confidential information.

granting or withholding of the requested relief." *Id.* at 24. "[C]ourts of equity should [also] pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Id*. (citations omitted). Although Coach Elko has an interest in protecting its business relationships, contracts, and finances, Coach Elko nonetheless fails to show that public interest and the balance of equities weigh in favor of an injunction. *Id*. at 20.

First, a preliminary injunction would hinder natural competition and normal business activities in a specialized market by preventing Defendants from servicing customers who voluntarily leave Coach Elko. (ECF Nos. 4-3 at 3, 18-1 at 3, 18-2 at 10.) Such an extraordinary remedy is inappropriate, particularly since Coach Elko failed to show that Defendants were soliciting and gaining their customers through improper means. *See Carlton*, 626 F.3d at 469 (noting that a preliminary injunction "is an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief"). Second, enjoining Defendants from contacting and servicing customers would be financially devastating for WTH Commercial, who just entered the Nevada market. (ECF Nos. 4 at 24, 17 at 13.) According to Defendants, such drastic action would "effectively mean the end of the Company's business in Nevada." (ECF No. 15 at 3.)

## VI. Requested Preliminary Injunctive Relief

In the Motions, Coach Elko requests the following relief: (1) enjoin Defendants from misappropriating Coach Elko's trade secrets, including further possession, disclosure, and use of the information; (2) enjoin Defendants from contacting and soliciting Coach Elko's current and potential customers; (3) enjoin Defendants from providing transportation services to Customer One; (4) enjoin Defendants from using Coach Elko's copyrighted work; (5) instruct Defendants to return documents and devices that contain Coach Elko's confidential information; and (6) instruct Defendants to preserve all case-related evidence. (ECF Nos. 4 at 24-25, 5 at 24-25.)

As discussed above, the Court declines to enjoin Defendants from using Coach Elko's "copyrighted" work since Coach Elko failed to register its copyright. (ECF No. 29.) *See Unicolors*, 959 F.3d at 1197. Next, Coach Elko's request for the return of its confidential documents is moot. During the Hearing, the parties agreed to work together to create a protocol for deleting and returning Coach Elko's confidential files in Peters' possession. (ECF No. 29.) Coach Elko's request regarding misappropriation, as it relates to further *possession* of its trade secrets, is likewise moot. (ECF Nos. 4 at 24, 29.) A preliminary injunction ordering Defendants to do something they said they are already going to do is unnecessary. Finally, Coach Elko's request for the preservation of all case-related evidence is also moot. Defendants have an inherent obligation to preserve evidence, particularly when they have been notified of the litigation, and Coach Elko failed to show that Defendants have breached this duty. *See Hernandez v. Vanveen*, Case No. 2:14-cv-01493-JCM-CWH, 2016 WL 1248702, at *1 (D. Nev. Mar. 28, 2016) (citing *In re Napster*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006)).

Although Coach Elko demonstrated a likelihood of misappropriation from Peters' receipt and possession of its trade secrets, the remaining three requests for relief—further use and disclosure of trade secrets, contacting and soliciting customers, and providing transportation services to Customer One—are premised on Defendants' exploitation of Coach Elko's confidential information. (ECF Nos. 4 at 24, 5 at 24.) In other words, the specific harm underlying these requests relates to Defendants' use and disclosure of Coach Elko's trade secrets to solicit and poach customers. However, as discussed above, Coach Elko failed to present any evidence that Peters actually revealed company trade secrets or that Defendants used this information to acquire Coach Elko's customers. Thus, Coach Elko's allegations are premised on mere speculation, and granting the requested relief would yield an overly broad injunction. *See U.S. v. Odessa Union Warehouse Co-op,* 833 F.2d 172, 175 (9th Cir. 1987) (noting that the district court has broad power to "fashion a remedy depending upon the necessities of the particular case");

*Stormans*, 586 F.3d at 1140 (emphasizing that "[i]njunctive relief . . . must be tailored to remedy the specific harm alleged" and the district court should avoid overly broad injunctions). Preliminary injunctive relief is therefore not appropriate or warranted here.

In sum, because Coach Elko failed to show "at an irreducible minimum" that it is likely to prevail on the majority of its claims, that it will suffer irreparable harm in the absence of preliminary relief, that the balance of equities and public interest weigh in its favor, and that its requested relief is premised on more than mere speculation, Coach Elko is not entitled to the extraordinary remedy of a preliminary injunction or temporary restraining order. *See Pimentel*, 670 F.3d at 1111; *Cottrell*, 632 F.3d at 1131-32; *Carlton*, 626 F.3d at 469. The Court therefore denies the Motions.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motions before the Court.

It is therefore ordered that Coach Elko's motions for a temporary restraining order and preliminary injunction (ECF Nos. 4, 5) are denied.

It is further ordered that Coach Elko's motion to expedite (ECF No. 25) and motion to shorten time (ECF No. 26) are denied as moot.

DATED THIS 27th Day of January 2022.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE