JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HOLLY E. WALKER, ESQ.
Nevada Bar No. 14295
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
E-Mail: joshua.sliker@jacksonlewis.com
E-Mail: holly.walker@jacksonlewis.com

*Attorneys for Plaintiff Elko, Inc.
d/b/a Coach USA (NV)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ELKO, INC., a Wyoming corporation,<br><br>                    Plaintiff,<br>v.<br><br>COREY PETERS, an individual; WYNNE TRANSPORTATION HOLDINGS, LLC, a Delaware limited liability company,<br><br>                    Defendants. | Case No.: 3:22-cv-00015-MMD-CLB<br><br>**FIRST AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF** |

Plaintiff ELKO, INC., d/b/a Coach USA (NV) ("Plaintiff" or "Coach Elko"), by and through its undersigned counsel, hereby brings this action against Defendants COREY PETERS ("Peters") and WYNNE TRANSPORTATION HOLDINGS, LLC ("WTH") (collectively, "Defendants"). Coach Elko is informed and believes, and based thereon alleges, as follows:

### INTRODUCTION

1.    This is the exactly the type of case that laws forbidding trade secret misappropriation, unlawful competition, deceptive business practices, and similar wrongdoing are designed to prevent.

2.    Coach Elko is a subsidiary of Coach USA, Inc. ("Coach USA") which is one of the largest passenger transportation companies in North America. Coach USA operates more than 2,400 motorcoaches, employs more than 5,000 people, and owns more than 25 bus carriers in North America which provide scheduled bus routes, motorcoach tours, charters, and/or city sightseeing

tours. Coach USA also provides local and inter-city transportation services for communities throughout the United States and Canada.

3.    For over 15 years, Coach Elko has provided important and critical contract transportation services throughout Northern Nevada to the state's vital mining industry. Coach Elko ensures employees working at the mines have safe and dependable transportation to and from their worksites.

4.    The story of WTH is the opposite. WTH is a provider of motorcoach transportation services and direct competitor of Coach Elko. WTH has not invested substantial time or money on service development, developing relationships with customers or conducting market research to understand opportunities for growth. Instead, rather than building its business through hard work and investment as Coach Elko has done, WTH, eager to find—but not have to earn—a shortcut to success, embarked on an unlawful plot to take Coach Elko's confidential and trade secret information and use that information to unfairly compete. This unlawful scheme allowed WTH to quickly enter the same market Coach Elko has been in for years, offering services that are identical to the ones Coach Elko offers, using Coach Elko's confidential and trade secret information, and targeting Coach Elko's customers.

5.    WTH got off the ground in Nevada with a plot to target Coach Elko from the inside. This was accomplished by targeting Coach Elko's personnel—including an executive employee with access to Coach Elko's most competitively sensitive information. This employee did not just leave Coach Elko for a new opportunity. Instead, in the weeks surrounding his departure, this employee stole Coach Elko's numerous confidential Coach Elko documents, including internal marketing and sales strategies, operational plans, information regarding bids and requests for proposals, pricing spreadsheets, and pricing formulas.

6.    The list of people involved in this unlawful scheme includes former Coach Elko employee Peters, who left Coach Elko and joined WTH to work in a role that overlaps with his prior responsibilities at Coach Elko and implicates the valuable confidential information and trade secrets they learned and acquired while working at Coach Elko. Peters acted in concert with and under the direction, authorization and approval of WTH.

7.     Peters—and by extension, his eventual employer at whose direction he acted, WTH—intentionally hid their wrongful conduct from Coach Elko. Coach Elko undertakes measures to ensure that its highly confidential information remains secret and is not misused, instituting robust security measures to protect that information, and including policies covering confidential information and information security in the Coach Elko Employee Handbook to ensure that all employees, including Peters, understand and are aware of their obligations with respect to Coach Elko's proprietary information.

8.     Defendants did not stop with their theft and improper use of Coach Elko's confidential and proprietary trade secrets. Indeed, their unlawful conduct went beyond their misappropriation and unlawful use of Coach Elko's confidential information. Defendants have also engaged in willful and targeted attempts to interfere with and disrupt Coach Elko's goodwill, business relations, and contracts including current and prospective Coach Elko customers.

9.     Defendants also diverted Coach Elko's corporate assets for their own gain and blatantly and willfully used Coach Elko's intellectual property without authorization. For instance, WTH's infringement includes, *inter alia*, poaching former Coach Elko employee Peters to acquire Coach Elko's confidential and proprietary information and trade secrets. Defendants' infringement was no doubt aimed at trading on the substantial goodwill that consumers associate with Coach Elko, exacerbating the harm to Coach Elko's reputation and market share, and further ensuring that Defendants have an undeserved competitive advantage.

10.    Defendants' unlawful conduct has already resulted in the loss of at least one long-time customer ("Customer 1") and has resulted in a substantial six-figure loss of revenue.

11.    Defendants' brazen unlawful scheme leaves Coach Elko no choice but to file this lawsuit seeking (1) permanent injunctive relief to prevent further irreparable harm to Coach Elko's reputation and its business and (2) recovery of monetary damages (in an amount to be proven at trial) for the harm caused by Defendants' wrongful conduct. Defendants' wrongful conduct falls squarely within the type of unfair competition that harms American businesses and the economy in critical ways. Unless halted, Defendants' wrongful actions will serve as a roadmap for other companies who have not invested in their own research and development to steal the trade secrets

of their competitors, and violate the intellectual property rights of the true innovators and market leaders.

## PARTIES

12.    At all times mentioned herein, Plaintiff Elko, Inc., d/b/a Coach Elko was and is a corporation organized under the laws of the State of Wyoming, with its principal place of business located at 4105 W. Idaho Street, Elko, Nevada 89801.

13.    At all times mentioned herein, Defendant WTH was and is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 7650 Esters Boulevard, Irving, Texas 75063.

14.    At all times mentioned herein, Defendant Peters was and is a citizen of Nevada residing in Spring Creek, Nevada. According to his LinkedIn page, Defendant Peters is employed by Defendant WTH as the Vice President, Industrial Markets. Defendant Peters was formerly employed by Coach Elko as its Vice President and General Manager of its Elko, Nevada office. Further, according to WTH's website (www.wthllc.com/about/): "Corey Peters, V.P. Wynne Transportation Holdings – Industrial Markets – Corey has over 30 years transportation experience at some of the leading companies in the people moving business, which include Coach Elko, Coach America, Greyhound, and MV Transit. His Career is well rounded including Operations, General Management, Safety, Business Development and Revenue Growth. Corey's vast experience includes employee transportation within the mining and construction industries, fixed route transportation systems, and point to point service. Corey is very familiar with the complex operating characteristics of the Industrial Markets."

## JURISDICTION AND VENUE

15.    The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Coach Elko's claims arise under federal law including the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*) ("DTSA") and Declaratory Judgment Act (28 U.S.C. §§ 1331, 1338, 2201-2202).

16.    This Court has supplemental jurisdiction over the related state law claims in this dispute pursuant to 28 U.S.C. §1367 because the claims are substantially related to Coach Elko's federal claims.

17.    The Court has personal jurisdiction over Defendant Peters because he is a citizen of, resides in and/or is physically present in Nevada. The Court further has personal jurisdiction over Defendant Peters because he agreed to submit himself to the personal jurisdiction of the state and federal courts located in Nevada in a Confidentiality and Non-Disclosure Agreement executed on June 1, 2017.

18.    The Court has personal jurisdiction over Defendant WTH because it conducts business in the State of Nevada and, through its subsidiaries, maintains employees and an office in Elko County, Nevada. The Court further has personal jurisdiction over Defendant WTH because Defendant Peters has perpetrated the conduct alleged in this Complaint while employed by, and/or acting as agents, officers and/or directors of Defendant WTH. Defendant Peters' conduct, which vests this Court with personal jurisdiction, is imputed to his employer Defendant WTH.

19.    Upon information and belief, Defendant WTH is subject to personal jurisdiction in the District of Nevada, consistent with the principles of due process and the Nevada long-arm statute, because Defendant WTH's actions in Nevada caused damage to and give rise to Coach Elko's claims that occurred in Nevada, including, but not limited to unlawful acquisition and use of Coach Elko's confidential and proprietary information and trade secrets, and conspiring with Defendant Peters and third parties to harm Coach Elko.

20.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants are subject to personal jurisdiction in this district, and/or a substantial part of the events giving rise to the claims in this action occurred within this district.

## FACTUAL ALLEGATIONS

**A. Coach Elko's Success in the Transportation Market.**

21.    Coach USA is one of the largest passenger transportation companies in North America. Coach USA operates more than 2,400 motorcoaches, employs more than 5,000 people, and owns more than 25 bus carriers in North America which provide scheduled bus routes, motorcoach tours, charters, and/or city sightseeing tours. Coach USA also provides local and inter-city transportation services for communities throughout the United States and Canada.

22.     For over 15 years, Coach Elko has provided employee transportation services to Nevada's mining industry located in and around Elko and Winnemucca, Nevada. Coach Elko's services ensure that mining employees have safe and dependable transportation to and from their worksites. Coach Elko's objective is to provide its customers with an employee transportation program that is safe, robust, adaptive, efficient, and cost-effective.

23.     Coach Elko's success has not come easily. The company has invested significant amounts of time and money in research, business development, market analysis, marketing and advertising, and building relationships with customers.

24.     Prior to the onset of the COVID-19 pandemic, Coach Elko employed 190 employees and operated 77 buses. In response to the pandemic, the Elko and Winnemucca locations increased their fleet size and brought in additional personnel, adapted to strict cleaning protocols, as well as passenger social distancing and capacity regulations. Over the last year, Coach Elko has adopted new policies and processes, while increasing its employee base to 233 and its fleet size to 107 buses.

**B.  Ex-Coach Elko Employee, Defendant Peters, Joins WTH After Stealing Trade Secrets and Other Valuable Intellectual Property.**

25.     Since June 1, 2017, Peters served as a Vice President of Coach USA and the General Manager of Coach Elko. He was responsible for overseeing and managing all aspects of Coach Elko's business including its operations, employees, facilities and finances.

26.     By virtue of his employment, Peters had extensive contacts with Coach Elko's customers in Nevada and elsewhere. In addition, Peters had access to Coach Elko's trade secrets and other confidential and proprietary information, including customer lists, proposals, customer contracts, pricing strategies, strategic plans, operational plans, financial information, as well as internal strategy and plans for marketing and sales. Peters also attended management-level and leadership where sensitive business information pertaining to Coach USA and Coach Elko was discussed including forward-looking business plans, detailed information regarding internal pricing, formulas, policies and pricing lists, competitive analyses, marketing and sales strategies and plans, and customer operations and service issues.

27.     At the outset of his employment, Peters signed a Confidentiality and Non-Disclosure Agreement ("Peters Agreement"), in which, among other things, Peters agreed to maintain the confidentiality of Coach Elko's confidential information and trade secrets.

28.     In pertinent part, paragraph 1 of the Peters Agreement provides:

    a.   The Company is in the highly competitive motorcoach, charter and city sightseeing tour business (hereafter "the Company Business"). Confidential Information and Trade Secrets are valuable Company assets that Employee is required to protect and preserve.

    b.   Employee acknowledges, covenants, and agrees that during the course of Employee's employment with the Company, Employee will come into contact with and have access to various technical and non-technical Trade Secrets and/or Confidential Information, which are the property of the Company. This information relates both to the Company and any persons, firms, corporations or other entities which are customers of the Company or other entities that have dealings with the Company. Employee acknowledges and agrees that Employee is being provided access to such Trade Secrets and/or Confidential Information, subject to and solely based upon Employee's agreement to the covenants set forth in this Agreement, and Employee would not otherwise be afforded access to such information.

    c.   *Confidential Information* and *Trade Secrets* (hereafter together "Confidential Information") consist of any information which is not generally known, is or may be used in the Company's business, could give competitors an advantage if they knew about it, or could impact upon the Company's internal operations. Such Confidential Information includes, but is not limited to: (i) information with respect to pricing, costs, profits, sales, markets, mailing lists, new business, strategies and plans for future business, and (ii) the identity and number of the Company's employees, their contact information, compensation, benefits; their knowledge, qualifications and experience and other confidential information which may be maintained in their personnel files — all of which information Employee acknowledges and agrees is not generally known or available to the general public, but has been developed, compiled and/or acquired by the Company at its great effort and expense. Confidential Information can be in any form: oral, written or machine readable, including electronic files.

    d.   Employee covenants and agrees to hold all Confidential Information and any data or documents containing or reflecting Confidential Information in the strictest confidence, and that both during employment and at any time after Employee's employment with the Company, Employee will not, without the prior written consent of [the President] or his/her designee(s), disclose, divulge or reveal to any person, or use for any purpose other than for the exclusive benefit of the Company, any Confidential Information, whether contained in Employee's memory or embodied in writing or other physical form.

29.     At a condition of his employment, Peters also agreed to comply with Coach Elko's Employee Handbook, which contains policies and procedures applicable to all employees, including the Confidential Information policy and Records Management policy.

30.     Coach Elko's Confidential Information policy states, in pertinent part, that confidential Coach Elko information "should never be transmitted or forwarded to outside individuals or companies that are not authorized to receive the information."

31.     Coach Elko's Records Management policy states, in pertinent part, that confidential Coach Elko information "that the separating employee has kept at home or in his or her personal space — including (without limitation) e-mails from a personal e-mail account that contain Coach [USA] information — shall be collected from the employee prior to separation."

32.     As a further condition of his employment, Peters also agreed to comply with Coach Elko's Email Policy which provided in pertinent part that "[e]mail cannot be stored on unauthorized mobile devices (flash drives, tablets, CD/DVDs), sent to personal email accounts or stored anywhere outside the authorized company network."

33.     In or around March 2021, Peters began having interpersonal conflicts with another employee whom he believed, among other things, was encroaching on his scope of authority. Peters complained to Coach Elko and after not receiving the resolution he believed he was entitled to, decided to get even with the Company. Upon information and belief, Peters began conspiring and/or working with WTH to acquire and use, without authorization, Coach Elko's confidential and proprietary information and trade secrets for the purpose of gaining an unfair competitive advantage against Coach Elko.

34.     On or around June 4, 2021, Peters resigned from Coach USA and was no longer serving as the General Manager of Coach Elko.

35.     Following his resignation, Coach Elko discovered Peters had been sending Coach Elko's confidential and proprietary information and trade secrets to his personal email account for nearly two years. Coach Elko determined that Peters had exfiltrated over 130 documents and communications containing Coach Elko's confidential and proprietary information and trade secrets. Indeed, in the approximately sixty (60) days prior to his resignation, Peters increased his

wrongful conduct and sent more than 40 documents and communications containing Coach Elko's confidential and proprietary information and trade secrets to his personal email account. Peters' actions were done without authorization from Coach Elko, and were in direct contravention of the covenants contained in the Peters Agreement and Coach Elko's policies and procedures.

36.     The confidential and proprietary information and trade secrets Peters sent to his personal email included, but was not limited to:

        a.  Coach Elko's detailed service proposals to existing and prospective customers which contained Coach Elko's proposed business plan for serving the unique needs of that particular customer;

        b.  service bid and financial proposals regarding services to be provided by Coach Elko to specific customers;

        c.  Coach Elko's financial information including monthly expenses; operational reports prepared by Coach Elko for specific clients which contained extensive information about the nature of the services provided by Coach Elko, the customer's needs and preferences, trends and analysis, and other relevant topics;

        d.  regular confidential internal reports regarding the number and status of Coach Elko's driver employee population which illustrated the drivers Coach Elko had available at any given time and would demonstrate whether staffing shortage impacted business;

        e.  Coach Elko's service contracts and other agreements with certain customers;

        f.  Coach Elko's internal operating plans and strategies; and,

        g.  Coach Elko's bus schedules for its customers.

37.     Further, while Peters was working for Coach Elko, he purchased a hard drive/memory stick, on behalf of Coach Elko, to serve as backup storage for Coach Elko's server. After Peters resigned, Coach Elko determined that the drive was not in the limited access server room and could not be located. The drive was being used to backup files on Coach Elko's server including its documents and information which either are or contain Coach Elko's confidential

information and trade secrets. Upon information and belief, the drive contained all of Coach Elko's Standard Operating Procedures, information concerning run rates (which consist of confidential information that implicates customer pricing strategy), profit and loss information, sensitive information about 80 Coach Elko employees (e.g., contact information, employment and restrictive covenant agreements, etc.), customer contracts which contain rates, route schedules, and confidential contract terms. Peters was the last person known to have possession or control of the drive. Coach Elko has not discovered any evidence to suggest that any other person took the drive. As such, upon information and belief, Peters took the drive without authorization at or near the time he resigned his employment, remains in possession of and is unlawfully using Coach Elko's confidential information and trade secrets.

38.     Collectively, this confidential and proprietary information and trade secrets provide Defendants with a ready-made road map for competing with Coach Elko. Indeed, in possession of such information, Defendants can determine the financial terms of Coach Elko's deals with its customers, the types of services Coach Elko provides and how often, Coach Elko's costs associated with providing such services.

39.     The categories of proprietary and trade secret information that Peters had access to by virtue of his leadership position at Coach Elko are categories of information for which Coach Elko has always taken, and continues to take, reasonable measures to keep secret and confidential, including without limitation implementing security procedures in the form of unique user sign on authentication and passwords to control access to Coach Elko's host computer system, networks and voicemail system, limiting the dissemination of and access to confidential information to certain employees, promulgating policies governing access to, and the handling and use of such information, and entering into confidentiality and non-disclosure agreements with certain employees and third parties who receive Coach Elko confidential information.

40.     Shortly resigning from Coach Elko, Peters went to work for WTH. Peters is employed as the Vice President, Industrial Markets.

41.     Peters' responsibilities at WTH implicate the confidential knowledge he gained in his role at Coach Elko, including, but not limited to, the identity of customers (and their

requirements and contract terms), market opportunities, and strategic planning regarding sales and marketing.

**C.  Defendants Interfere With Coach Elko's Customers.**

42.     With all of Coach Elko's customer information in Defendants' possession (courtesy of Peters, who defected to WTH and took Coach Elko's confidential and trade secret information with him), Defendants are perfectly positioned to compete unfairly with Coach Elko. Among other valuable confidential and trade secret Coach Elko information, Defendants now have Coach Elko's internal marketing and sales strategies, customer contracts, operational plans, correspondence regarding bids and requests for proposals, pricing spreadsheets, and pricing formulas that Coach Elko developed through significant time and investment. In other words, Defendants have secured for themselves a shortcut to business development that they did not earn, and at Coach Elko's expense.

43.     Defendants have already been using the misappropriated information and attempted to interfere with Coach Elko's business relations and contracts by contacting current Coach Elko customers and pressuring them to move their business to Defendants.

44.     Defendants' misappropriation of Coach Elko's proprietary information has caused actual disruption in the contractual relationships between Coach Elko and its customers, harming Coach Elko. For instance, one of Coach Elko's loyal customers, Customer 1, notified Coach Elko that it is terminating its agreement with Coach Elko in order to do business with Defendant WTH.

## <u>FIRST CLAIM FOR RELIEF</u>

### (Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq.*,<br>Against Both Defendants)

45.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

46.     The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used

in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1832, *et seq.*

47.    "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

48.    Coach Elko owns and possesses certain confidential, proprietary, and trade secret information, as alleged above. This confidential, proprietary, and trade secret information relates to services that are used, sold and/or ordered in, or that are intended to be used, sold, and/or ordered in, interstate or foreign commerce. Coach Elko's services are used worldwide.

49.    Coach Elko derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. Coach Elko has taken, and continues to take, reasonable measures to keep that information secret and confidential. These measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, and entering into confidentiality and non-disclosure agreements with certain employees.

50.    At the outset of his employment, Peters signed a Confidentiality and Non-Disclosure Agreement, in which, among other things, he agreed to maintain the confidentiality of Coach Elko's confidential information and trade secrets.

51.    In addition, Coach Elko requires that employees with exposure or access to Coach Elko's trade secrets and confidential information, including Peters, comply with Coach Elko's Employee Handbook, which contains policies and procedures applicable to all employees, including the Confidential Information policy and Records Management policy. Peters was provided with copies of these policies during his employment with Coach Elko and thus was aware of his obligation to comply with such policies.

52.    During his employment with Coach Elko, Peters had access and exposure to and utilized confidential and proprietary information that constituted Coach Elko's trade secrets. As described above, this included, but was not limited to, information regarding Coach Elko's current

customers, prospective customers, its bidding and marketing strategies, its pricing models, and proposals and quotes.

53.    Upon information and belief, Peters has shared this information with WTH and/or has used this information himself to directly compete with Coach Elko and/or alter Coach Elko's relationship with Coach Elko's existing customers.

54.    Without Coach Elko's consent, Peters misappropriated Coach Elko's confidential, proprietary, and trade secret information in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

55.    Defendants' conduct as alleged above constitutes misappropriation of Coach Elko's trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

56.    As a direct and proximate result of Defendants' conduct, Coach Elko has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

57.    Defendants' conduct entitles Coach Elko to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i). Further, due to the irreparable harm that Coach Elko has suffered and will continue to suffer as a result of Defendants' unlawful actions, Coach Elko is entitled to a permanent injunction (a) prohibiting Defendants from (i) any further acquisition, use or disclosure of Coach Elko's trade secrets, (ii) making, distributing or selling any services developed, designed, or improved through the use of Coach Elko's trade secrets, (iii) engaging in any further dealings of any kind with Coach Elko's customers, and (iv) engaging in any business with Coach Elko's customers that it would not have but for the misappropriation of Coach Elko's trade secrets; and (b) ordering the disgorgement and the immediate return of all of Coach Elko's confidential information and trade secrets in the possession, custody or control of any of the Defendants.

58.    Coach Elko requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Peters' computers, personal and business USB and electronic storage devices, email accounts, "cloud"-

based storage accounts, and mobile phone call and message history to determine the extent to which Coach Elko's trade secrets were wrongfully taken and/or disseminated to others.

59.     Defendants' misappropriation and disclosure of Coach Elko's trade secrets entitles Coach Elko to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B). Coach Elko is also entitled to recover for Defendants' unjust enrichment.

60.     Defendants' misappropriation of Coach Elko's trade secrets was willful and malicious and was undertaken for the purpose of harming Coach Elko. Coach Elko therefore seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

## SECOND CLAIM FOR RELIEF
**(Nevada Uniform Trade Secrets Act – N.R.S. § 600A.010 *et seq.*,**
**Against Both Defendants)**

61.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

62.     Coach Elko's confidential, proprietary, and trade secret information includes customer lists, information, pricing, formulas, compilations, techniques, systems, designs, source code and other such information.

63.     Coach Elko has invested significant time, effort and resources to develop its confidential, proprietary, and trade secret information.

64.     Coach Elko derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. Coach Elko has taken, and continues to take, reasonable measures to keep that information secret and confidential. These measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, and entering into confidentiality and non-disclosure agreements with certain employees.

65. At the outset of his employment, Peters signed a Confidentiality and Non-Disclosure Agreement, in which, among other things, he agreed to maintain the confidentiality of Coach Elko's confidential information and trade secrets.

66. In addition, Coach Elko requires that employees with exposure or access to Coach Elko's trade secrets and confidential information, including Peters, comply with Coach Elko's Employee Handbook, which contains policies and procedures applicable to all employees, including the Confidential Information policy and Records Management policy. Peters was provided with copies of these policies during his employment with Coach Elko and thus was aware of his obligation to comply with such policies.

67. Coach Elko's confidential, proprietary, and trade secret information provides it with competitive advantages that if known would provide commercial or economic value from their disclosure to or use by others.

68. Peters has knowledge of Coach Elko's protective measures and assisted with the development and deployment of those measures during his prior employment and relationship with Coach Elko.

69. Due to Peters' prior employment and relationship with Coach Elko, Peters knew that Coach Elko treated its customer lists, information, pricing, formulas, compilations, techniques, systems, designs, source code and other such information, as trade secrets.

70. At all relevant times, Peters had a duty to maintain the secrecy of Coach Elko's trade secrets. However, in violation of this duty and applicable law, Peters disclosed that information to others, including WTH, and by doing so misappropriated Coach Elko's trade secrets. NRS 600A.030(2).

71. During his employment with Coach Elko, Peters had access to confidential and proprietary information that constituted Coach Elko's trade secrets. As described above, this included, but was not limited to, information regarding Coach Elko's current customers, prospective customers, its bidding and marketing strategies, its pricing models, and proposals and quotes.

72.     Upon information and belief, Peters has shared this information with WTH and/or has used this information himself to directly compete with Coach Elko and/or alter Coach Elko's relationship with Coach Elko's existing customers.

73.     Defendants have acquired and used, or intend to use, Coach Elko's confidential, proprietary, and trade secret information through improper means, including, but not limited to taking electronic files, hard-copy documents, without Coach Elko's knowledge or consent, and using personal knowledge of Coach Elko's confidential, proprietary, and trade secret information that pursuant to, including, but not limited to, a duty, contract, agreement, policy, handbook, law and fiduciary duties, Defendants were prohibited from acquiring and/or using. Indeed, Peters had a duty to preserve the secrecy of Coach Elko's confidential information and trade secrets and a duty not to use or disclose it.

74.     Defendants' conduct as alleged above constitutes misappropriation of Coach Elko's trade secrets under the Nevada Uniform Trade Secrets Act, NRS 600A.030, *et seq.*

75.     Based on the foregoing allegations, Coach Elko is entitled to recover from Defendants all monetary damages sustained as a result of Defendants' misappropriation, including the actual loss caused by the misappropriation and the unjust enrichment to Defendants stemming from the wrongful acquisition and use of Coach Elko's valuable trade secrets.

76.     Based on information and belief, and in view of the foregoing allegations, Defendants' misappropriation of Coach Elko's trade secrets was and is willful and malicious. Accordingly, Coach Elko should be granted exemplary damages and punitive damages, unjust enrichment damages and attorneys' fees pursuant to NRS 600A.040-060.

77.     Due to the irreparable harm that Coach Elko has suffered and will continue to suffer as a result of Defendants' unlawful actions, Coach Elko is entitled to a permanent injunction (a) prohibiting Defendants from (i) any further acquisition, use or disclosure of Coach Elko's confidential information and trade secrets, (ii) offering or providing any services developed, designed, or improved through the use of Coach Elko's trade secrets, (iii) engaging in any further dealings of any kind with Coach Elko's customers, and (iv) engaging in any business with Coach Elko's customers that it would not have but for the misappropriation of Coach Elko's trade secrets;

and (b) ordering the disgorgement and the immediate return of all of Coach Elko's confidential information and trade secrets in the possession, custody or control of either Defendant.

78.    Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

### THIRD CLAIM FOR RELIEF
**(Breach of Contract against Corey Peters)**

79.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

80.    The Confidentiality and Non-Disclosure Agreement ("Peters Agreement") between Coach Elko and Defendant Peters is a valid and binding contract for which Defendant Peters received adequate consideration.

81.    Coach Elko has performed all of its obligations under the Peters Agreement and Defendant Peters has not been excused from performing his obligations.

82.    The Peters Agreement prohibits Defendant Peters from disclosing or disseminating to any other person, organization or entity or otherwise using, disclosing, disseminating, and/or employing any of Coach Elko's confidential information or trade secrets.

83.    Defendant Peters breached the Peters Agreement by disclosing and using Coach Elko's confidential information and trade secrets including, but not limited to, customer lists and agreements, business strategies and strategic plans, marketing plans, and financial and pricing information, to and for the benefit of his business venture and new employer, Defendant WTH.

84.    Upon information and belief, Defendant Peters has also breached the Peters Agreement by assisting, conspiring or collaborating with, inducing, soliciting, or otherwise ratifying or acquiescing in the unauthorized and wrongful acquisition, disclosure and/or use of Coach Elko's confidential information and trade secrets by other persons and entities including, but not limited to, Defendant WTH.

85.    As a direct and proximate result of Defendant Peters' breach of the Peters Agreement, Coach Elko has suffered and will continue to suffer damages.

86.     Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

**FOURTH CLAIM FOR RELIEF**
**(Breach of the Covenant of Good Faith and Fair Dealing**
**Against Corey Peters)**

87.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

88.     "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and enforcement." *A.C. Shaw Constr. v. Washoe County*, 105 Nev. 913, 914, 784 P.2d 9 (1989). "The implied covenants of good faith and fair dealing impose a burden that require each party to a contract to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Shaw v. CitiMortgage, Inc.*, 201 F. Supp. 3d 1222, 1251 (D. Nev. 2016) (quotation omitted).

89.     Coach Elko and Defendant Peters are party to the Peters Agreement, a valid and enforceable contract.

90.     Defendant Peters breached his duty of good faith and fair dealing by acting in a manner unfaithful to the purpose of the Peters Agreement by disclosing and using Coach Elko confidential, proprietary, and trade secret information.

91.     As a direct and proximate result of Peters' breach of his duties of good faith and fair dealing, Coach Elko has suffered and will continue to suffer damages.

92.     Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

**FIFTH CLAIM FOR RELIEF**
**(Breach of the Fiduciary Duty of Loyalty**
**Against Corey Peters)**

93.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

94.     As employees of Coach Elko, Peters owed a duty of loyalty to act solely in the interests of his employer within the business area for which he was employed.

95.    As trusted employees, Peters owed Coach Elko a duty that required him to, among other things, refrain from conducting activities in any manner inimical to Coach Elko's best interests.

96.    Peters breached his respective fiduciary duties of loyalty to Coach Elko by engaging in the wrongful conduct alleged herein while still employed by Coach Elko.

97.    Peters' wrongful conduct alleged herein occurred at a time when he continued to owe duties to Coach Elko. Indeed, Peters utilized Coach Elko's time, facilities, and resources to engage in this wrongful conduct.

98.    As a direct and proximate result of these breaches, Coach Elko has sustained and will incur further damages including, but not limited to, damages reflecting lost business, lost profits, and damage to its goodwill, in amounts to be proven at trial. Coach Elko has also suffered and will continue to suffer irreparable harm, and will continue to suffer such injury until the breaches are permanently enjoined.

99.    The aforementioned wrongful conduct was intentional, malicious, and in bad faith and has subjected and will continue to subject Coach Elko to cruel and unjust hardship in conscious disregard of its rights, so as to justify an award of exemplary and punitive damages according to proof at trial.

100.    Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

**SIXTH CLAIM FOR RELIEF**
**(Tortious/Intentional Interference with Prospective Economic Advantage**
**Against Both Defendants)**

101.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

102.    Prospective contractual relationships exist or existed between Coach Elko and its current customers and/or potential customers, with respect to the services provided by Coach Elko in the transportation industry.

103.    Defendants knew or should have known of the existence of Coach Elko's prospective relationships with its current customers and/or potential customers with respect to these

services because Defendant Peters was previously employed by, affiliated, or had a business relationship with Coach Elko.

104.   Defendants intended to harm Coach Elko by preventing Coach Elko's prospective contractual relations with its current customers and/or potential customers with respect to Coach Elko's services in the transportation industry. Indeed, due to Defendants wrongful interference, Defendants caused a long-time customer of Coach Elko to terminate its contract in order to do business with Defendants. The customer did so after Defendants used and/or relied up on Coach Elko's confidential and proprietary information and trade secrets to undercut Coach Elko's pricing and relationship with the customer.

105.   Upon information and belief, Defendants' interference with Coach Elko's prospective economic relations was and is intentional, willful, malicious, without justification or excuse, and was perpetrated in an effort to obtain an unfair business advantage over Coach Elko by benefiting from and exploiting Coach Elko's business, including, but not limited to its intellectual property and other business assets.

106.   Coach Elko has suffered and will continue to suffer damages, including but not limited to compensatory and consequential damages, as a direct and proximate result of Defendants' intentional interference with Coach Elko's prospective contractual relations with its current customers and/or potential customers, in an amount to be proven at trial.

107.   Upon information and belief, Defendants' interference with Coach Elko's prospective contractual relations with its current customers and/or potential customers was intentional, fraudulent, malicious, or oppressive, thereby entitling Coach Elko to an award of punitive damages.

108.   Defendants used improper means to intentionally interfere with Coach Elko's existing or potential economic relations by using Coach Elko's trade secret customer contact information and customer lists to solicit current customers and/or potential customers, and other contacts in order to directly compete with Coach Elko.

109.   Defendants have used improper means to interfere with Coach Elko's existing and prospective economic relations by spreading misinformation about Coach Elko, by soliciting Coach

Elko's current customers and/or potential customers based on false information and mischaracterizations about Coach Elko, and Defendants' capabilities.

110.    Defendants are liable for all damages due to their willful misuse of Coach Elko's intellectual property and other assets, and intentional interference with Coach Elko's lawful business operations.

111.    Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

### SEVENTH CLAIM FOR RELIEF
**(Tortious/Intentional Interference with Contractual Relationships**
**Against Both Defendants)**

112.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

113.    Defendants had knowledge of Coach Elko's contractual relationship and/or prospective contractual relationship with its customers, including Customer 1.

114.    Defendants are third parties to these contractual relationships.

115.    Defendants intentionally and maliciously interfered with the contractual relationship by use of improper motives and improper means to intentionally cause the breach or termination of said contractual relationships.

116.    Defendants were motivated substantially by malice and personal interest, rather than the furtherance of legitimate business interests, in their interference with this contractual relationship.

117.    As a direct and proximate cause of Defendants' intentional interference with this contractual relationship, Coach Elko has suffered and will continue to suffer damages.

118.    Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

### EIGHTH CLAIM FOR RELIEF
**(Nevada Deceptive Trade Practices Act – NRS 41.600, *et seq.*,**
**Against Both Defendants)**

119.    The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

120.    Defendants are knowingly making false representations regarding their services, their intellectual property rights, and their affiliations.

121.    Defendants are using deceptive representations in connection with Defendants' actual or planned services for sale including that Coach Elko approves of or has given permission for Defendants to operate using its confidential information and trade secrets, and solicit and interfere with its contractual and prospective economic relationships.

122.    In doing so, Defendants are knowingly making false representations regarding the source, sponsorship, approval, or certification of its services.

123.    Defendants' actions described above constitute deceptive trade practices under Nevada law, including, *inter alia*, NRS 598.0915.

124.    Pursuant to NRS 598.0953(1), the foregoing deceptive trade practices are *prima facie* evidence of Defendants' intent to injure competitors, such as Coach Elko, and to destroy or substantially lessen competition.

125.    Pursuant to NRS 41.600(2)(e), Defendants' foregoing deceptive trade practices constitute "consumer fraud."

126.    Defendants are liable for all damages due to their willful misuse of Coach Elko intellectual property and other assets, and other acts intended to deceive the consuming public, and by misrepresenting Coach Elko lawful business operations.

127.    Coach Elko has been and will continue to be irreparably damaged by Defendants' statutory deceptive trade practices/consumer fraud, and therefore are victims for purposes of standing under NRS 41.600.

128.    Coach Elko has no adequate remedy at law to redress such harm.

129.    By reason of the foregoing, Coach Elko is entitled to injunctive relief and monetary damages against Defendants.

130.    Coach Elko has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Coach Elko requests that judgment be entered against Defendants as

follows:

1.    For equitable and injunctive relief to:

    a.  enjoin Defendants and those acting in concert or participation with them from directly or indirectly transferring, using or disclosing Coach Elko's confidential, proprietary, and trade secret information;

    b.  enjoining Defendants from contacting, soliciting, diverting or otherwise interfering with Coach Elko's relationships with its current customers and/or potential customers;

    c.  enjoining Defendants from providing any passenger transportation services to Customer 1 and any other customers wrongfully obtained;

    d.  require Defendants to immediately return any and all property of Coach Elko, including but not limited to: (i) all Coach Elko confidential, proprietary, and trade secret information; (ii) computers provided to Defendants by Coach Elko; (iii) all external storage devices and cloud accounts containing Coach Elko confidential, proprietary, and trade secret information; (iv) any other Coach Elko-owned devices or equipment; and (v) All copies, backups, and duplicates of the Coach Elko's electronic data;

    e.  permit the independent verification that all confidential, proprietary, and trade secret information of Coach Elko has been deleted from Defendants' email accounts, electronic storage accounts and devices; and

    f.  require Defendants to preserve and not destroy any and all evidence relating to this matter, including, but not limited to, documents and/or communications (including any emails, texts or other messages) concerning (i) Peters' employment with or work for WTH hereto, (ii) the formation, establishment and operations of WTH in Nevada, (iii) the nature of the relationship between Defendants; (iv) Defendants' contacts and dealings with any of Coach Elko's customers, (v) Defendants' acquisition, disclosure, use or possession of any of Coach Elko's confidential and/or proprietary information or trade secrets;

2.     For damages associated with Defendants' unlawful actions;

3.     For attorneys' fees and costs incurred herein;

4.     For exemplary damages; and

5.     For such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Coach Elko demands a trial by jury on all issues so triable.

Dated: April 11, 2022.

JACKSON LEWIS, P.C.

*/s/ Joshua A. Sliker*
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HOLLY E. WALKER, ESQ.
Nevada Bar No. 14295
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*
*Elko, Inc. d/b/a Coach USA (NV)*

## CERTIFICATE OF SERVICE

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 11th day of April 2022, I caused a true and correct copy of the foregoing **FIRST AMENDED COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF** to be served via the CM/ECF system to:

John M. Naylor, Esq.
Benjamin B. Gordon, Esq.
**NAYLOR & BRASTER**
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Defendant Corey Peters*

Gregory S. Gilbert, Esq.
Jon T. Pearson, Esq.
Brian D. Downing, Esq.
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Attorneys for Defendant Wynne Transportation Holdings, LLC*

/s/ Joshua A. Sliker
Employee of Jackson Lewis P.C.

4891-2584-3483, v. 1