JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
HOLLY E. WALKER, ESQ.
Nevada Bar No. 14295
**JACKSON LEWIS P.C.**
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101
Telephone: (702) 921-2460
Facsimile: (702) 921-2461
E-Mail: joshua.sliker@jacksonlewis.com
E-Mail: holly.walker@jacksonlewis.com

*Attorneys for Plaintiff Elko, Inc.*
*d/b/a Coach USA (NV)*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| ELKO, INC., a Wyoming corporation,<br><br>        Plaintiff,<br><br>v.<br><br>COREY PETERS, an individual; WYNNE TRANSPORTATION HOLDINGS, LLC, a Delaware limited liability company,<br><br>        Defendants. | Case No.: 3:22-cv-00015-MMD-CLB<br><br>**PLAINTIFF'S: (1) OPPOSITION TO DEFENDANT WYNNE TRANSPORTATION HOLDINGS, LLC'S MOTION TO DISMISS (ECF No. 53); (2) ALTERNATIVELY, PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT; AND (3) TO CONDUCT JURISDICTIONAL DISCOVERY** |

Plaintiff Elko, Inc. d/b/a Coach USA (NV) ("Plaintiff" or "Coach Elko"), by and through its undersigned counsel, hereby files its Opposition to Defendant Wynne Transportation Holdings, LLC's ("Defendant" or "WTH") Motion to Dismiss Plaintiff's First Amended Complaint (ECF No. 53) and, alternatively, Plaintiff's Motion for Leave to Amended First Amended Complaint and to Conduct Jurisdictional Discovery. This Opposition and Motion are based on the Memorandum of Points and Authorities attached hereto, all pleadings and papers on file in this case, and any oral argument the Court may entertain.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Defendant WTH attempts to distract this Court by insisting that Coach Elko has brought this action in an effort to suppress competition. This is far from the truth. Coach Elko has brought this action because WTH is not competing fairly. Indeed, WTH has obtained an unfair advantage through Defendant Corey Peters—Coach Elko's former Vice President and General Manager—who

misappropriated Coach Elko's confidential information and trade secrets over the course of two years, then went to work for WTH all while still having possession and knowledge of such confidential information and trade secrets, and in the course of that employment, has been soliciting and obtaining business from at least one of Coach Elko's long-standing customers. WTH achieved this scheme, in part, through its subsidiary company—WTH Commercial Services ("WTHCS")—which serves as both an alter ego and agent of WTH in Nevada.

WTH insists that it has nothing to do with the misconduct of its employee, Defendant Peters, and argues that "Coach Elko must present something more than its conclusory allegations" to demonstrate personal jurisdiction over WTH. ECF No. 53, 2:11. This argument lacks merit for four primary reasons. First, WTH is subject to personal jurisdiction in Nevada by virtue of its employment of Defendant Corey Peters, whose misconduct occurred within Nevada, was felt in Nevada, and was performed on behalf and for the benefit of WTH. Second, WTH is subject to personal jurisdiction in Nevada because it maintains an interactive website that specifically targets customers in Elko. Indeed, not only does WTH's website expressly advertise to the Nevada market, but WTH admitted that it has generated at least one sale in Nevada and employed a resident of Nevada (i.e., Defendant Peters) to work on projects in the state. Third, personal jurisdiction is also proper because WTH is the alter ego of its subsidiary, WTHCS. The two companies share such unity of interest and ownership that their separateness no longer exists, and failure to disregard their separate identities would result in fraud or injustice. Fourth, WTH is subject to personal jurisdiction in Nevada because the forum acts of its subsidiary are attributable to it through the principle of agency. Specifically, WTH is subject to personal jurisdiction because WTCHS is the general agent of WTH in Nevada. WTHCS performs ground transportation services that are sufficiently important to WTH, such that if it did not have a representative to perform them, WTH's own officials would undertake to perform substantially similar services. Essentially, WTHCS' presence in Nevada substitutes for WTH's presence, and there is no basis for distinguishing between the business of WTH and that of WTHCS for purposes of personal jurisdiction.

In its Motion, WTH further contends that Coach Elko's Complaint should be dismissed pursuant to FRCP 12(b)(6). This argument fails for two reasons. First, Coach Elko has sufficiently

pled with particularity each of its claims for relief. Second, to the extent that WTH argues the Nevada Unfair Trade Secrets Act preempts certain claims because they are ultimately based upon the misappropriation of trade secrets, this contention is premature. Indeed, Federal Rule of Civil Procedure 8 allows Coach Elko to plead alternative, even duplicative, causes of action at this early stage of litigation.

Accordingly, WTH's arguments lack merit, and its Motion to Dismiss should be denied. In the alternative, should the Court be inclined to grant the Motion to Dismiss, Coach Elko respectfully requests that the Court stay its decision and grant Coach Elko with leave to conduct jurisdictional discovery and/or plead additional facts that could cure any deficiencies.

## II.    <u>LEGAL ARGUMENT</u>

### A.  The Exercise of Personal Jurisdiction over WTH is Proper.

#### 1.   *Standard of review.*

The plaintiff bears the burden of demonstrating personal jurisdiction over each defendant. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). The Court first looks to federal statutes to determine whether personal jurisdiction exists. *See Gator.com Corp. v. L.L. Bean, Inc.*, 314 F.3d 1072, 1076 (9th Cir. 2003). Absent a federal statute, the Court must determine (1) whether the state's long-arm statute has been satisfied and (2) whether the exercise of personal jurisdiction is consistent with the notions of due process. *Trump v. Eighth Judicial Dist. Court*, 857 P.2d 740, 747 (Nev. 1993). Nevada's long arm statute authorizes personal jurisdiction so long as such jurisdiction is "not inconsistent with the Constitution." *See Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 415 (9th Cir. 1977); NRS § 14.065.

Personal jurisdiction is appropriate when the defendant engages in sufficient contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). These requirements "give a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The strength of the defendant's contacts with the forum determines whether that defendant

is subject to general or specific jurisdiction. *Boschetto v. Hansing*, 529 F.3d 1011, 1016 (9th Cir. 2008). General jurisdiction exists where there are "substantial" or "continuous and systematic" contacts with the forum state such that jurisdiction would be appropriate regardless of whether the defendant's conduct occurred in the forum. *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000). Specific jurisdiction, on the other hand, is appropriate where "the case arises out of certain forum-related acts." *Id.* The touchstone of personal jurisdiction is "purposeful availment of the forum, which ensures that defendants are not haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

As applicable here, a nonresident defendant's contacts with the forum state may permit the exercise of specific jurisdiction if: (1) the defendant has performed some act or transaction within the forum or purposefully availed himself of the privileges of conducting activities within the forum, (2) the plaintiff's claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction over the defendant is reasonable. *Pebble Beach Co.*, 453 F.3d at 1155-56.

Under the first prong of the "minimum contacts test," the plaintiff must establish either that the defendant "(1) purposefully availed himself of the privilege of conducting his activities in the forum, or (2) purposefully directed his activities toward the forum." *Id.* at 1155. "Evidence of availment is typically action taking place in the forum that invokes the benefits and protection of the laws in the forum." *Id.* Evidence of direction usually consists of conduct taking place outside the forum that the defendant directs at the forum. *Id.* at 1155-56. The purposeful direction aspect of the first prong is satisfied when a foreign act is both aimed at and has effect in the forum. *Id.* In other words, the defendant "must have (1) committed an intentional act, which was (2) expressly aimed at the forum state, and (3) caused harm, the brunt of which is suffered and which the defendant knows is likely to be suffered in the forum state." *Id.* To satisfy the third element of this test, the plaintiff must establish the defendant's conduct was "expressly aimed" at the forum; a "mere foreseeable effect" in the forum state is insufficient. Id. The "express aiming" requirement

is satisfied when the defendant is alleged to have engaged in wrongful conduct "individually targeting a known forum resident." *Bancroft*, 223 F.3d at 1087.

The second prong of the specific jurisdiction test requiring that the contacts constituting purposeful availment or purposeful direction give rise to the current action is measured in terms of "but for" causation. *Id.* at 1088. "If the plaintiff establishes both prongs one and two, the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (quotation omitted).

When, as here, the defendant's motion to dismiss is based on a declaration, "the plaintiff need only make a *prima facie* showing of jurisdictional facts to defeat the defendant's motion."[1] The Court accepts uncontroverted factual allegations as true and must resolve disputed facts in the plaintiff's favor. *See Schwarzenegger*, 374 F.3d at 800.

### 2. *Peters admitted he performed services on behalf of WTH in Nevada.*

As an initial matter, WTH is subject to personal jurisdiction in Nevada by virtue of its employment of Defendant Corey Peters, whose misconduct occurred within Nevada, was felt in Nevada, and was performed on behalf and for the benefit of WTH. The fundamental question here is one of due process—would it be fair, based on WTH's contacts with Nevada, for it to expect to have to defend itself in a Nevada court? As explained below, the answer is yes.

The Ninth Circuit treats purposeful availment for tort claims differently from purposeful availment for contract claims. *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitism*, 433 F.3d 1199, 1206 (9th Cir. 2006) (quotations omitted). For contract claims, the Ninth Circuit "typically inquires whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum." *Id.* For tort claims, on the other hand, the Ninth Circuit applies "an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* at 1206 (quotations omitted). However, both methods of analysis and the purposeful availment requirement in general are "but a test for determining the more fundamental issue of whether 'a defendant's conduct and

---

[1] *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990); *Data Disk, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977) ("[I]f a plaintiff's proof is limited to written materials, it is necessary only for these materials to demonstrate facts which support a finding of jurisdiction in order to avoid a motion to dismiss.").

connection with the forum state are such at he should reasonably anticipate being haled into court there." *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986).

Here, WTH cannot hide behind the veil of purported distance when it employed a Nevada resident as one of its key executives, when it assigned this executive to perform services on its behalf in Nevada, and when the actions of both WTH and this executive were consequently felt in Nevada. In his Declaration offered in support of Defendants' Opposition to Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, Defendant Corey Peters stated that he is employed by WTH as the Vice President of Industrial Markets.[2] ECF No. 18-2, ¶ 1. Peters stated that after he started working for WTH, he used LinkedIn to locate "purchasing people" at Customer 1 "for the purpose of generating sales" for WTH. *Id.* at ¶¶ 67-68. Peters met with employees from Customer 1 for the purpose of selling WTH's services. *Id.* at ¶ 71. Peters also stated that Customer 1 requested a "proposal for services from WTH" and that in response, "WTH submitted a proposal" to Customer 1, which was accepted. *Id.* at ¶¶ 72-73. Peters further stated that Customer 1 and WTH "went back and forth several times regarding price" and that the "search, proposal and pricing process is what WTH uses in all markets." *Id.* at ¶¶ 75-76. Thus, WTH's conduct and connection with Nevada are such that it should reasonable anticipate being haled into this Court, and it is subject to specific personal jurisdiction.

### 3. WTH is subject to specific personal jurisdiction through its interactive website that targets Nevada customers.

Moreover, WTH is subject to personal jurisdiction in Nevada because it maintains an interactive website that specifically targets Nevada customers. Generally, posting a passive website in the forum state is insufficient to confer personal jurisdiction. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir.1997). Rather, "something more" is required to show that a defendant expressly aimed or purposefully directed its conduct in a substantial way to the forum state. *Id.* at 418. This test is met where a defendant targets the forum state through advertising or makes even a

---

[2] Indeed, Plaintiff filed the First Amended Complaint in reliance on Peters' declaration as to the identity of his employer.

single sale in the forum state.[3] Further, the Ninth Circuit has found express aiming where the parties are competitors in a small or specialized industry.[4]

Here, WTH has engaged in "something more" than the operation of a passive website and has specifically targeted consumers in Nevada. WTH's website lists an Elko location, boasts that its leadership "is very familiar with the operating conditions and environment" of Winnemucca and Elko and has specifically worked at Coach Elko prior to joining WTH, and dedicates a section to advertising "safe, reliable and experienced ground transportation services for a wide variety of commercial and industrial customers" in Nevada. *See* Wynne Transportation Holdings "Contact / Locations," **Exhibit 2**, at p. 2, available at https://www.wthllc.com/contact/ (last accessed May 10, 2022); Wynne Transportation Holdings "Companies," **Exhibit 3**, at p. 3, available at https://www.wthllc.com/companies/ (last accessed May 10, 2022); ECF No. 4-11, at 3, 5, 7. Further, in its Motion, WTH admits that its employee—Defendant Peters—lives in Nevada and has "worked on . . . projects in Elko, Nevada" for WTH's subsidiary company. ECF No. 53-1, ¶ 6. Indeed, there is no dispute that Defendant Peters has generated at least one sale for WTH in Nevada—specifically, a now former client of Coach Elko ("Customer 1"). ECF No. 46, ¶¶ 67-73. These admissions are summarized in the following chart:

---

[3] *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019-21 (9th Cir.2002); *see Geanacopulos v. Start*, 39 F. Supp. 3d 1127, 1131 (D. Nev. 2014) (finding personal jurisdiction where the defendant's website lists locations throughout the United States, including Nevada, and features sections advertising to residents of Reno and Las Vegas); *Ismile Dental Prods., Inc. v. Smile Dental Supply, Inc.*, No. 2:16-cv-01055-TLN-GGH, 2017 U.S. Dist. LEXIS 45997, at *6 (E.D. Cal. Mar. 27, 2017) (finding personal jurisdiction where the defendant had an interactive website and when two sales of products were shipped directly to addresses in the forum); *Vanity.com, Inc. v. Vanity Shop of Grand Forks, Inc.*, No. C 12-02912 SI, 2012 U.S. Dist. LEXIS 144088, at * 3-4 (N.D. Cal. Oct. 4, 2012) (finding personal jurisdiction where the defendant sought to engage with California customers through an interactive website and approximately 0.02% of the total sales were shipped to California).

[4] *See Collegesource v. Academic One*, 653 F.3d 1066, 1078 (9th Cir. 2011) (finding express aiming where the parties "were direct competitors in a relatively small industry"); *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1129-31 (9th Cir. 2010), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1069 (9th Cir. 2017), (finding express aiming where the nonresident defendant plagiarized from the resident plaintiff's website because both parties worked in the specialized area of elder abuse law).

| Citation | Title of Document | Admission/Statement |
|----------|-------------------|---------------------|
| Exhibit 2, at p. 2 | WTH's Website – "Contact / Locations" Page (https://www.wthllc.com/contact/) | • Lists contact information for a location at 920 Mountain City Hwy., Elko, NV 70615. |
| Exhibit 3, at p. 3 | WTH's Website – "Companies" Page (https://www.wthllc.com/companies/) | • Lists contact information for a location at Elko, NV 70615 and advertises "safe, reliable and experienced ground transportation services for a wide variety of commercial and industrial customers" in Nevada. |
| ECF No. 4-11, at 5, 7 | WTH's Website – "About" Page (https://www.wthllc.com/about/) | • States that a member of its leadership (i.e., Yolanda Perez) "is very familiar with the operating conditions and environment" of Winnemucca and Elko.<br><br>• States that two members of its leadership (i.e., Defendant Peters and Yolanda Perez) have worked for Coach Elko prior to their employment with WTH. |
| ECF No. 53-1, ¶¶ 5-6 | Declaration of John Montgomery in support of WTH's Motion to Dismiss | • Admits that its employee, Defendant Peters, "resides in Nevada" and has "worked on . . . projects in Elko, Nevada" for WTH's subsidiary company. |
| ECF No. 46, ¶¶ 67-73 | Declaration of Corey Peters in Support of WTH's Opposition to Coach Elko's Motion for Temporary Restraining Order and Preliminary Injunction | • States that during his employment with WTH, Defendants Peters generated at least one sale for WTH in Nevada—specifically, a now former client of Coach Elko ("Customer 1"). |

Based on the foregoing, Coach Elko has fulfilled the "something more" test to show that WTH purposefully directed its conduct in a substantial way to the forum state. WTH's interactive website, which advertises specifically to customers in Nevada and boasts that members of its leadership have worked for Coach Elko prior to their employment with WTH, and WTH's own admission that it has made at least one sale in Nevada sufficiently demonstrate purposeful direction. Further, a finding of express aiming is proper in this case because the parties are competitors in a small and specialized industry. Coach Elko and WTH compete in a specialized industry for a small market—i.e., providing ground transportation services to the mining industry in northern Nevada. *See* ECF No. 51, ¶¶ 3-4. Accordingly, WTH is subject to personal jurisdiction in Nevada.

### *4. WTH is subject to specific personal jurisdiction under the alter ego theory.*

WTH is also subject to personal jurisdiction in Nevada because the forum acts of its subsidiary are attributable to it through the principle of alter ego. Specifically, WTH is subject to specific personal jurisdiction because WTHCS' contacts may be imputed to WTH for personal jurisdiction purposes because WTHCS is the alter ego of WTH. To demonstrate a parent and its subsidiary are alter egos, the plaintiff must establish a *prima facie* case that the two companies share "such unity of interest and ownership" that the companies' separateness no longer exists and

"failure to disregard [their separate identities] would result in fraud or injustice." *Doe v. Unocal Corp.*, 248 F.3d 915, 926 (9th Cir. 2001) (quotation omitted). To demonstrate a unity of interest warranting disregard of corporate separateness, the plaintiff must show the parent controls its subsidiary to such a degree as to render the subsidiary a "mere instrumentality" of its parent. *Id.* (quotation omitted). Typically, this would involve showing the parent controls the subsidiary's internal affairs or daily operations. *Kramer Motors, Inc. v. British Leyland, Ltd.*, 628 F.2d 1175, 1177 (9th Cir. 1980).

In addition to showing lack of corporate separateness, the plaintiff also must show that failure to disregard the corporate form would promote fraud or injustice. The fraud or injustice must relate to the forming of the corporation or abuse of the corporate form, not a fraud or injustice generally. *Laborers Clean-Up Contract Admin. Trust Fund v. Uriarte Clean-Up Serv., Inc.*, 736 F.2d 516, 524-25 n. 12 (9th Cir. 1984). For example, undercapitalization at the subsidiary's inception may be evidence of the parent's fraudulent intent. *Id.*

Here, the lack of observance that WTH and WTHCS are somehow separate and distinct entities is evident. Both the parent and subsidiary share such unity of interest and ownership that the companies' separateness no longer exists. For instance, WTH and WTHCS share an address of 7650 Esters Boulevard, Irving, Texas 75063, as reflected in relevant filings with the U.S. Department of Transportation, and they both feature John Montgomery and Matthew Keis as members of corporate management. ECF No. 4-13, at 3; ECF No. 4-14, at 2; ECF No. 53-1, ¶¶1, 6; ECF No. 18-1, ¶ 14.

John Montgomery, President and Chief Executive Officer of WTH, submitted a declaration in support of Defendants' Opposition to Plaintiff's Motion for TRO and PI. ECF No. 18-1. Therein, Mr. Montgomery stated that the "customer pipeline" in Northern Nevada would represent less than 25% of WTH's "existing" customer pipeline. *Id.* at ¶ 21. Mr. Montgomery confirmed that WTH developed its service pricing model and that it is used at WTH and its subsidiaries. *Id.* at ¶¶ 25-36. He further stated that WTH is seeking to replicate the success it has had in other parts of the United States in Nevada. *Id.* at ¶ 61. He also stated that "it's no surprise that industrial customers in Nevada and elsewhere want to do business with" WTH. *Id.* Mr. Montgomery also discussed the integration

of WTH and WTHCS' operations. Specifically, he stated that WTH and WTHCS use the same accounting system and software (ECF No. 18-1, ¶ 49), human resources information system (*Id.* at ¶ 50), cloud-based office software suite (*Id.* at ¶ 51), VOIP phone service (*Id.* at ¶ 52), operating system (*Id.* at ¶ 53), GPS and safety-related systems (*Id.* at ¶ 54), and vehicle maintenance software system (*Id.* at ¶ 55).

Moreover, WTH's website makes no differentiation between its subsidiaries—including WTHCS—and acts as if they are all part of one company. *See* Ex. 2, at p. 2; Ex. 3, at p. 3; ECF No. 4-11, at 3, 7. These companies, separate as they may appear in filing forms, provide essentially the same services, and have significantly similar websites, including almost identical offered services, design elements, and stock photographs. *Compare* www.wthllc.com *with* www.mountaincrewchange.com. Any casual observer would come to the conclusion that these entities are one and the same. Indeed, the numerous parallels between WTH and WTHCS are summarized in the following chart:

| Citation | Title of Document | Admission/Statement |
|---|---|---|
| Exhibit 2, at p. 2;<br><br>Exhibit 3, at p. 3;<br><br>ECF No. 4-11, at 4, 7 | WTH's Website – "Contact / Locations" Page (https://www.wthllc.com/contact/);<br><br>WTH's Website – "Companies" Page (https://www.wthllc.com/companies/);<br><br>WTH's Website – "About" Page (https://www.wthllc.com/about/) | • WTHCS openly advertises itself as part of WTH under the name of "Mountain Crew Change."<br><br>• By WTH's own admission, Mountain Crew is unincorporated, and will become the trade name for WTH Commercial. ECF No. 17. at 10, 22.<br><br>• By WTH's own admission, WTH "is the sole member of" WTHCS. ECF No. 17, at 10. |
| ECF No. 4-14, at 2 | U.S. Department of Transportation Filing for WTHCS | • WTH and WTHCS share an address of 7650 Esters Boulevard, Irving, Texas 75063. |
| ECF No. 4-13, at 3 | Nevada Secretary of State Filing for WTHCS | • Lists John Montgomery as a Member of WTHCS. Mr. Montgomery is the President and CEO of WTH, the parent company of WTHCS. ECF No. 53-1, ¶¶ 1, 6; ECF No. 4-11, at 4.<br><br>• Lists Matthew Keis as a Member of WTHCS. Mr. Keis also serves on the Board of Managers of WTH. ECF No. 18-1, ¶ 14. Moreover, Mr. Keis is the representative of Gemini Investors VI, L.P., which owns WTH and is an investor in lower middle market businesses. *Id.* |

Moreover, failing to disregard these fictitious corporate forms would work a great fraud and injustice on Coach Elko. Coach Elko is not facing a true competitor that is home-grown in the unique Elko, Nevada market. Instead, Coach Elko is facing loss of business and over a decade of hard work, research, and service through stolen information. WTH now claims the corporate form as a shield from its directed wrongdoing, in order to silo off potential liability for the true actor who directed and benefit from Peters' activities. Clearly, there is a connection between WTH and WTHCS that evidences similarity, direction, and control. To ignore these connections is to allow WTH to subject Coach Elko to a lack of recovery on the merits of its claims, and may more broadly serve as encouragement for other out-of-state companies to upend smaller Nevada business markets by flipping the loyalties of disgruntled employees and taking advantage of earned market knowledge, risking only a dummy local corporate entity. Accordingly, WTH is subject to personal jurisdiction in Nevada because the forum acts of its subsidiary are attributable to it through the principle of alter ego.[5]

### 5. WTH is subject to specific personal jurisdiction under the theory of agency.

Further, WTH is subject to personal jurisdiction in Nevada because the forum acts of its subsidiary are attributable to it through the principle of agency. Specifically, WTH is subject to specific personal jurisdiction because its subsidiary, WTHCS, serves as the agent of WTH in Nevada. A subsidiary's contacts may be imputed to its parent for personal jurisdiction purposes where the subsidiary is the parent's general agent in the forum. *Harris Rutsky Co. v. Bell Clements*, 328 F.3d 1122, 1134 (9th Cir. 2003). A subsidiary is its parent's agent for purposes of attributing its forum-related contacts to the parent if the subsidiary "performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the

---

[5] At minimum, this Court should not allow WTH to simply deny the existence of an alter ego as conclusory without permitting some discovery to Coach Elko. Coach Elko has established the high similarity of these companies, a centralized presentation of leadership and marketing, common location and corporate formation, and the involvement of a common investor (evidencing undercapitalization). At bottom, it is just not credible that WTH and WTHCS, with common ownership, management, and shared employees providing nearly identical services, are truly separate. Instead, these entities are clearly set up to maintain a façade or veneer of siloed transportation businesses for exactly the purpose asserted here – to defeat responsibility for wrongdoing under the law. However, should the Court find that it is unclear if the entities are alter egos, permitting discovery into personal jurisdiction is appropriate. *See Harris Rutsky*, 328 F.3d at 1135 (noting that failure to permit jurisdictional discovery was an abuse of discretion where the facts were unclear) (*citing Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 431 n. 24 (9th Cir. 1977); *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405-6 (9th Cir. 1994)).

1    corporation's own officials would undertake to perform substantially similar services.'" *Doe*, 248

2    F.3d at 928 (quoting *Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1405 (9th Cir. 1994)). The

3    ultimate inquiry is whether the subsidiary's presence in the forum "substitutes" for its parent's

4    presence. *Id.* at 928-29 (quotation omitted). That is precisely the case here.

5        When subsidiaries "almost by definition . . . [do] for their parent what their parent would

6    otherwise have to do on its own," then courts attribute the subsidiaries' contacts to the parent

7    company.[6]

8        Here, WTHCS was WTH's general agent in Nevada. WTH's business is not purely as a

9    holding company, as it does not passively hold stock in companies from an unrelated range of

10   businesses. Rather, the crux of what WTH does—providing ground transportation services—is by

11   definition what WTHCS does. As discussed above, WTH's website makes no differentiation

12   between itself and WTHCS, instead acting as if they are one and the same. *See* Ex. 2, at p. 2; Ex. 3,

13   at p. 3; ECF No. 4-11, at 3, 7. Indeed, WTH advertises its services as follows: "WTH (Wynne

14   Transportation Holdings) offers world class industrial and large commercial employee ground

15   transportation service." *See* ECF No. 4-11, at 3. In the same breath, WTH's website also boasts that

16   its subsidiary, WTHCS, offers "safe, reliable and experienced ground transportation services for a

17   wide variety of commercial and industrial customers." *See* Ex. 3, at p. 3. Even a cursory review of

18   WTH's website reveals that WTHCS performs identical services for WTH. In fact, the only notable

19   difference is that WTHCS serves the Nevada—rather than the Texas—market. As the only division

20   of WTH located in Nevada, WTHCS plays a significant role in WTH's organizational life such that

21   it has acted as a substitute for WTH in Nevada. Accordingly, WTHCS serves as the agent of WTH,

22   and the forum acts of WTHCS are attributable to WTH through the principle of agency.[7]

23

24   _____

     [6] *Bulova Watch Co., Inc. v. K. Hattori Co., Ltd.*, 508 F. Supp. 1322, 1342 (E.D.N.Y. 1981); *see Chan*, 39 F.3d at 1405-

25   06 (remanding to the district court for additional findings of fact regarding agency where the German parent corporation
     owned and operated cruise ships and its local subsidiary marketed cruises and chartered cruise ships and sold the cruise

26   ticket to the plaintiffs out of which the claims arose); *Modesto City Schs. v. Riso Kagaku Corp.*, 157 F.Supp.2d 1128,
     1135 (E.D.Cal. 2001) (holding subsidiary was parent's agent for personal jurisdiction purposes where subsidiary acted
     as sole conduit for marketing and selling parent's products in the United States).

27   [7] Again, at minimum, this Court should not allow WTH to simply deny the existence of agency as conclusory without
     permitting some discovery to Coach Elko. Should the Court find that it is unclear if WTHCS is an agent of WTH,

28   permitting discovery into personal jurisdiction is appropriate.

**B.  The First Amended Complaint Survives Dismissal Under FRCP 12(b)(6).**

   *1.  Standard of review.*

A court may dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." FRCP 12(b)(6). A properly pleaded complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FRCP 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). While Rule 8 does not require detailed factual allegations, it demands more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 555). "Factual allegations must be enough to rise above the speculative level." *Twombly*, 550 U.S. at 555. Thus, to survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In *Iqbal*, the Supreme Court of the United States clarified the two-step approach district courts are to apply when considering motions to dismiss. First, a district court must accept as true all well-pleaded factual allegations in the complaint; however, legal conclusions are not entitled to the assumption of truth. *See Iqbal*, 556 U.S. at 678. Second, a district court must consider whether the factual allegations in the complaint allege a plausible claim for relief. *Id.* at 679. A claim is facially plausible when the plaintiff's complaint alleges facts that allow a court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* at 678.; *see also Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555) (To avoid a Rule 12(b)(6) dismissal, a complaint does not need exhaustive detail; rather, it must plead "enough facts to state a claim to relief that is plausible on its face."). Accordingly, a complaint does not need "detailed factual allegations" to pass muster under FRCP 12(b)(6) consideration, but rather only factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Dismissal of a complaint without leave to amend is only proper when it is clear the complaint could not be saved by any amendment. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 871 (9th Cir. 2016); *see also* FRCP 15(a)(2) (instructing district courts to "freely give leave" to amend).

2. ***Coach Elko sufficiently pled its First and Second Claims for Relief.***

WTH argues for dismissal of the First and Second Claims for Relief pursuant to the Defend Trade Secrets Act ("DTSA") and the Nevada Unfair Trade Secrets Act ("UTSA"). Specifically, WTH contends that Coach Elko has not sufficiently pled the existence of a trade secret or the misappropriation of that secret. ECF No. 53, 7:22-28. Despite WTH's contentions to the contrary, Coach Elko's factual allegations rise above mere speculation and fulfill the standard of facial plausibility.

In order to state a claim for misappropriation under the UTSA, a plaintiff must allege: (1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) that the misappropriation was made in breach of an express or implied contract or by a party with a duty not to disclose. *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). A claim for misappropriation under the DTSA has substantially similar elements. *See* 18 U.S.C. § 1836; *Switch Ltd. v. Fairfax*, No. 2:17-cv-02651-GMN-VCF, 2018 U.S. Dist. LEXIS 148818, at *10 (D. Nev. Aug. 30, 2018).

The DTSA broadly defines "trade secret" information to include "all forms and types of financial, business, scientific, technical, economic, or engineering information," if (1) the owner "has taken reasonable measures to keep such information secret" and (2) "the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." 18 U.S.C. § 1839(3). Under the DTSA, "misappropriation" is defined in multiple different ways. The "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" constitutes a misappropriation. 18 U.S.C. § 1839(5)(A). A misappropriation also occurs when one "disclos[es]" or "use[s]" another's trade secret without the consent of the trade-secret owner. 18 U.S.C. § 1839(5)(B). "Improper means" also includes theft, and breach or inducement of a breach of a duty to maintain secrecy. 18 U.S.C. § 1839(6).

Here, Coach Elko sufficiently pled all of the elements of a DTSA and UTSA claim. First, Coach Elko has identified the competitively sensitive information that Peters had access to at Coach

Elko and took with him upon his departure, which falls squarely within the categories of information courts have found to be confidential and trade secret information. *See* ECF No. 51, ¶¶ 36-37 (listing several items that constituted Coach Elko's confidential and proprietary information and trade secrets), ¶ 42 ("Among other valuable confidential and trade secret Coach Elko information, Defendants now have Coach Elko's internal marketing and sales strategies, customer contracts, operational plans, correspondence regarding bids and requests for proposals, pricing spreadsheets, and pricing formulas that Coach Elko developed through significant time and investment."), ¶ 52 (specifying trade secrets as "information regarding Coach Elko's current customers, prospective customers, its bidding and marketing strategies, its pricing models, and proposals and quotes").[8]

Moreover, Coach Elko has alleged that it has taken reasonable measures to preserve the secrecy of its trade secrets and derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. *See* ECF No. 51, ¶¶ 49-51. The allegations pled within the Complaint are far from threadbare; to the contrary, they provide ample detail. *See id.* at ¶¶ 27-32, 49-51 (specifying Coach Elko's measures to preserve the secrecy of its trade secrets through password-protecting this information; limiting the dissemination of information to certain employees; promulgating policies governing access to, and the handling and use of such information; and entering into confidentiality and non-disclosure agreements with certain employees, including Defendant Peters).

Second, Coach Elko has sufficiently alleged misappropriation of its trade secrets against WTH. These allegations are not conclusory, but rather directly tie WTH to the misconduct committed by Peters and its acquisition of Coach Elko's trade secrets through improper means. *See id.* at ¶ 5 ("WTH got off the ground in Nevada with a plot to target Coach Elko from the inside.

---

[8] *See also, e.g., Marina Dist. Dev. Co. v. AC Ocean Walk, LLC*, No. 2:20-cv-01592-GMN-BNW, 2020 U.S. Dist. LEXIS 166241, at *9 (D. Nev. Sep. 10, 2020) ("Customer lists are generally regarded as trade secrets."); *Bartech Sys. Int'l, Inc. v. Mobile Simple Solutions, Inc.*, No. 2:15-cv-02422-MMD-NJK, 2016 U.S. Dist. LEXIS 68030, at *25 (D. Nev. May 24, 2016) (holding that the plaintiff is likely to succeed in establishing that a customer list constitutes a trade secret); *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000) (a customer list can be a trade secret when confidential and where the list was secret and guarded, where the list was missing after an employee had access to the list which went missing after the employee left his employment, then provided customers with "more competitive pricing").

This was accomplished by targeting Coach Elko's personnel—including an executive employee with access to Coach Elko's most competitively sensitive information."), ¶ 6 ("The list of people involved in this unlawful scheme includes former Coach Elko employee Peters, who left Coach Elko and joined WTH to work in a role that overlaps with his prior responsibilities at Coach Elko and implicates the valuable confidential information and trade secrets they learned and acquired while working at Coach Elko. Peters acted in concert with and under the direction, authorization and approval of WTH."), ¶ 7 ("Peters—and by extension, his eventual employer at whose direction he acted, WTH—intentionally hid their wrongful conduct from Coach Elko."), ¶ 9 ("Defendants also diverted Coach Elko's corporate assets for their own gain and blatantly and willfully used Coach Elko's intellectual property without authorization. For instance, WTH's infringement includes, *inter alia*, poaching former Coach Elko employee Peters to acquire Coach Elko's confidential and proprietary information and trade secrets."), ¶ 33 ("Peters began conspiring and/or working with WTH to acquire and use, without authorization, Coach Elko's confidential and proprietary information and trade secrets for the purpose of gaining an unfair competitive advantage against Coach Elko."), ¶ 73 ("Defendants have acquired and used, or intend to use, Coach Elko's confidential, proprietary, and trade secret information through improper means. . ."). WTH's insistence that Coach Elko's particularized allegations amount to mere speculation holds no weight. Coach Elko has pled factual content that allows the Court to draw the reasonable inference that the WTH is liable for the misconduct alleged under the DTSA and UTSA. Accordingly, the First and Second Claims for Relief must survive dismissal.

### 3. WTH's preemption argument is premature.

WTH argues that the Nevada Unfair Trade Secrets Act preempts the Sixth, Seventh, and Eighth Claims for Relief because the claims are ultimately based upon the misappropriation of trade secrets. ECF No. 53, 13-14. However, WTH's argument fails because Federal Rule of Civil Procedure 8 allows Coach Elko to plead alternative, even duplicative, causes of action. Accordingly, dismissal at this stage is premature.

"Nevada's Uniform Trade Secrets Act prohibits the misappropriation of trade secrets and provides for a private right of action for damages and injunctive relief." *See* NRS § 600A.010 *et*

*seq.* NRS § 600A.090, a specific provision in the UTSA, displaces conflicting tort, restitutionary, and other laws permitting civil remedies for misappropriation of a trade secret. *See* NRS § 600A.090. Only common law claims that arise out of the same factual episode as the misappropriation of a trade secret claim are precluded under the UTSA. *Frantz*, 999 P.2d at 357-58. Indeed, the Supreme Court of Nevada expressly recognized that the UTSA does *not* provide "a blanket preemption to all claims that arise from a factual circumstance possibly involving a trade secret." *Id.* at n.3 (emphasis added).

Notwithstanding this, FRCP 8(d) permits a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient." *See* FRCP 8(d)(2). Indeed, courts in this District have expressly held that dismissal is premature in the context of the preemption and scope of the UTSA.[9][10] Accordingly, the Court should deny WTH's Motion to Dismiss as to the Sixth, Seventh, and Eighth Claims for Relief.

### 4.   *Coach Elko sufficiently pled its Eighth Claim for Relief.*

WTH argues for dismissal of the Eighth Claim for Relief pursuant to the Nevada Deceptive Trade Practices Act ("DTPA"). Specifically, WTH contends Coach Elko has failed to state a claim that WTH engaged in deceptive trade practices. ECF No. 53, 17-19. However, this argument is without merit. NRS § 41.600 provides, "[a]n action may be brought by any person who is a victim of consumer fraud. As used in this section, 'consumer fraud' means: . . . a deceptive trade practice as defined in NRS 598.0915 to NRS 598.0925 . . . ." *See* NRS § 41.600. In relevant part, the DTPA defines deceptive trade practices to include: "knowingly mak[ing] a false representation as to the source, sponsorship, approval, or certification of its services." NRS § 598.0915(2). To establish a

---

[9] *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs.*, No. 2:20-cv-01470-GMN-VCF, 2021 U.S. Dist. LEXIS 186727, at *7-8 (D. Nev. Sep. 29, 2021) ("[T]he Court finds dismissal premature at this stage of the proceeding. Plaintiff may plead statutory and non-statutory claims in the alternative, even if non-statutory claims are duplicative of the misappropriation of trade secrets claim."); *Montgomery v. Etreppid Techs., LLC*, Nos. 3:06-cv-00056-PMP-VPC, 3:06-cv-00145-PMP-VPC, 2008 U.S. Dist. LEXIS 28118, at *9 (D. Nev. Apr. 7, 2008) ("Even if any of the above claims are duplicative of the misappropriation of trade secrets claim and therefore preempted by the Nevada Unfair Trade Secrets Act, [the plaintiff] is entitled to plead the claims in the alternative under Rule 8.").

[10] WTH omits this case law from its Motion to Dismiss, instead opting to discuss non-binding and inapposite authority from other jurisdictions. ECF No. 53, 13-14. Indeed, the only case from this District that WTH cites—*Hutchison v. KFC Corp.*, 809 F. Supp. 68 (D. Nev. 1992)—does not apply here. *See ImageKeeper*, 2021 U.S. Dist. LEXIS 186727, at *7-8 (rejecting the *Hutchison* case on the basis that it does not address "the crossover between the Nevada UTSA and Federal Rule of Civil Procedure 8").

deceptive trade practice claim under Nevada law, the plaintiff must demonstrate that (1) an act of consumer fraud by the defendant (2) caused (3) damages to the plaintiff. *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 657-58 (D. Nev. 2009) (noting that the Supreme Court of Nevada has not specified the elements of a DPTA claim and predicting how the court would rule).

Here, according to WTH's rationale, dismissal is always proper unless the allegations of the Complaint provide exhaustive detail. ECF No. 53, 18:27. However, that is not the standard in this case.[11] Coach Elko has pled factual content that allows the Court to draw the reasonable inference that the WTH is liable for the misconduct alleged under the NDTPA. Specifically, Coach Elko alleged that Defendants are "knowingly making false representations regarding their services, their intellectual property rights, and their affiliations" and "using deceptive representations in connection with Defendants' actual or planned services for sale including that Coach Elko approves of or has given permission for Defendants to operate using its confidential information and trade secrets, and solicit and interfere with its contractual and prospective economic relationships." ECF No. 51, ¶¶ 120-121. This misconduct resulted in WTH knowingly making false representations regarding the source, sponsorship, approval, or certification of its services, which caused injury to Coach Elko in the form of destroying or lessening competition and deceiving Coach Elko's customers. *Id.* at ¶¶ 124-126. Coach Elko does not need to plead beyond these allegations to survive dismissal. *See ImageKeeper*, 2021 U.S. Dist. LEXIS 186727, at *12 (denying a motion to dismiss a DPTA claim involving misappropriation and use of the plaintiff's trade secrets and confidential information because the plaintiff alleged a plausible claim regarding the defendant's false representations); *Switch, Ltd. v. Uptime Inst., LLC*, 426 F. Supp. 3d 636, 643-44 (D. Nev. 2019) (denying a motion to dismiss a DPTA claim because the plaintiff alleged that the defendants knowingly misrepresented the nature or quality of their services). Accordingly, the Court should deny WTH's request to dismiss the Eighth Claim for Relief.

---

[11] Indeed, although apparently not to WTH's satisfaction, Coach Elko has alleged WTH's false representations with particularity—including the who, what, when, where, and how of the misconduct charged. *See, e.g.*, ECF No. 51, ¶ 43 ("Defendants have already been using the misappropriated information and attempted to interfere with Coach Elko's business relations and contracts by contacting current Coach Elko customers and pressuring them to move their business to Defendants."), ¶ 44 ("Defendants' misappropriation of Coach Elko's proprietary information has caused actual disruption in the contractual relationships between Coach Elko and its customers, harming Coach Elko. For instance, one of Coach Elko's loyal customers, Customer 1, notified Coach Elko that it is terminating its agreement with Coach Elko in order to do business with Defendant WTH.").

**C. Should the Court Grant WTH's Motion to Dismiss, Coach Elko Requests Leave to Amend its Complaint and to Conduct Jurisdictional Discovery.**

Rule 15(a)(2) of the Federal Rules of Civil Procedure permits courts to "freely give leave [to amend] when justice so requires." FRCP 15(a)(2). Should the Court be inclined to grant WTH's Motion to Dismiss, Coach Elko respectfully requests leave to file an amended complaint which pleads additional facts to cure any alleged deficiencies. *See, e.g.*, *Mina De Oro, LLC v. Goettsche*, No. 2:20-cv-00994-GMN-VCF, at *6 (D. Nev. Mar. 28, 2022) ("The Court finds that Plaintiffs may be able to plead additional facts that could cure the Complaint's current deficiencies related to personal jurisdiction."). In addition, it may be necessary to add WTH Commercial Services, LLC as a defendant based on WTH's representations that Defendant Peters performed some of the work at issue herein on behalf of WTHCS. ECF No. 53-1, ¶¶ 5-6. As noted above, WTHCS was originally a defendant in this case, but was dismissed with the filing of the First Amended Complaint based on Defendant Peters' representations that he is employed by WTH and performed services regarding Customer 1 in the course and scope of his employment with Defendant WTH. Accordingly, Coach Elko should be granted leave to file an amended complaint.[12]

Further, Coach Elko should be permitted to conduct jurisdictional discovery. The Court has broad discretion to grant leave to conduct jurisdictional discovery. *Laub v. U.S. Dept. of the Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003). It should allow such discovery where the facts supporting jurisdiction are unclear or controverted or where discovery would assist the Court's jurisdictional analysis. *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008). While the plaintiff need not make a *prima facie* case of personal jurisdiction to warrant discovery, it must demonstrate more than a "hunch" that the discovery will uncover facts relevant to the defendant's ties to Nevada. *Id.*; *Switch, Ltd. v. Switch, Inc.*, No. 2:18-cv-00738-KJD-CWH, 2019 U.S. Dist. LEXIS 39762, at *2 (D. Nev. Mar. 12, 2019).

Coach Elko has done so here. Specifically, Coach Elko has presented evidence from WTH's own website that WTH has interacted with Nevada customers to market its services. If proven, this

---

[12] While Plaintiff acknowledges that a proposed amended complaint typically should accompany a request to amend, Plaintiff submits that that requirement should yield based on the current procedural posture. The parties do not know how the court will rule on WTH's Motion to Dismiss and thus, Plaintiff does not know what, if anything, specifically must be cured in an amended complaint sufficient to prepare a proposed amended complaint for the Court's review.

fact would likely subject Defendant to personal jurisdiction in Nevada. *Switch*, 2019 U.S. Dist. LEXIS 39762, at *2 (granting jurisdictional discovery when the plaintiff presented evidence from the defendant's website that it interacted with Nevada residents). Additionally, Coach Elko has demonstrated Peters' sworn statements that he performed work on behalf of WTH in Nevada regarding Customer 1 which is directly at issue in this case. Further, Coach Elko has established the high similarity between WTH and WTHCS, including a centralized presentation of leadership and marketing, and common location and corporate formation, among other factors. The numerous parallels raised herein do not amount to a mere coincidence and instead point to one conclusion— WTHCS' contacts with Nevada should be imputed to WTH for personal jurisdiction purposes. As a result, if the Court find that the facts supporting jurisdiction are unclear, the Court should at least grant Coach Elko leave to conduct jurisdictional discovery.

Accordingly, Plaintiff requests that the Court open jurisdictional discovery for ninety (90) days and permit Plaintiff to: (1) send written discovery to explore whether WTH's contacts with Nevada are sufficient to subject WTH to personal jurisdiction in Nevada; (2) depose WTH's CEO John Montgomery and an appropriate FRCP 30(b)(6) witness for WTHCS; and (3) subpoena WTHCS to evaluate whether it has an agency or alter ego relationship with WTH and whether that relationship is enough to confer personal jurisdiction. *See Switch, Ltd.*, 2019 U.S. Dist. LEXIS 39762, at *5.

### III.    CONCLUSION

Based on the foregoing, Coach Elko respectfully requests that the Court deny Defendant WTH's Motion to Dismiss (ECF No. 53). In the alternative, should the Court be inclined to grant Defendant WTH's Motion to Dismiss, Coach Elko respectfully requests that the Court stay a decision on the Motion to Dismiss and instead grant Coach Elko's Motion for Leave to Conduct Jurisdictional Discovery and/or to Amend the First Amended Complaint.

DATED this 16th day of May 2022.

JACKSON LEWIS, P.C.

*/s/ Joshua A. Sliker*
JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that I am an employee of Jackson Lewis P.C. and that on this 16th day of May 2022, I caused a true and correct copy of the **PLAINTIFF'S OPPOSITION TO DEFENDANT WYNNE TRANSPORTATION HOLDINGS, LLC'S MOTION TO DISMISS (ECF No. 53) AND, ALTERNATIVELY, PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT AND TO CONDUCT JURISDICTIONAL DISCOVERY** to be served via the CM/ECF system to:

John M. Naylor, Esq.
Benjamin B. Gordon, Esq.
**NAYLOR & BRASTER**
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145

*Attorneys for Defendant Corey Peters*

Gregory S. Gilbert, Esq.
Jon T. Pearson, Esq.
Brian D. Downing, Esq.
**HOLLAND & HART LLP**
9555 Hillwood Drive, 2nd Floor
Las Vegas, Nevada 89134

*Attorneys for Defendant Wynne Transportation Holdings, LLC*

/s/ Joshua A. Sliker
Employee of Jackson Lewis P.C.