UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| ELKO, INC., d/b/a COACH USA (NV), | Case No. 3:22-cv-00015-MMD-CLB |
| Plaintiff, | ORDER |
| v. | |
| WTH COMMERCIAL SERVICES, LLC *et al.*, | |
| Defendants. | |

**I.    SUMMARY**

Plaintiff Elko, Inc. ("Coach Elko") sued Defendants WTH Commercial Services, LLC ("WTH Commercial") and Corey Peters, a former Coach Elko employee, for stealing its trade secrets and confidential information and using that information to unfairly compete in the Nevada market. (ECF No. 72 ("SAC").) Before the Court is Defendant WTH Commercial's motion to dismiss Coach Elko's SAC. (ECF No. 80 ("Motion").)[1] As further explained below, the Court will mostly deny the Motion because the majority of Coach Elko's claims are sufficiently pled, but will grant the Motion as to Coach Elko's claim under the Nevada Deceptive Trade Practices Act.

**II.    BACKGROUND[2]**

Coach Elko is a subsidiary of Coach USA and provides transportation services to employees of Nevada's mining companies in the Elko and Winnemucca area. (ECF No. 72 at 1-2.) Defendants are WTH Commercial, which similarly provides ground

---

[1]Plaintiff filed a response (ECF No. 85), and Defendant filed a reply (ECF No. 88).

[2]The following facts are adapted from the SAC.

transportation services to mining companies in Nevada and surrounding states, and Corey Peters, Coach Elko's former Vice President and General Manager.[3] (*Id.* at 2-3.)

Coach Elko alleges that, at the direction and with the authorization of WTH Commercial, Peters stole Coach Elko's trade secrets and confidential information, and that both defendants have misappropriated these trade secrets in violation of a confidentiality agreement and company policy. (*Id.* at 2-3, 6-8, 12-13.) Coach Elko specifically accuses Peters of downloading and sending confidential "information regarding Coach Elko's current customers, prospective customers, its bidding and marketing strategies, its pricing models, and proposals and quotes to his personal email for two years before his resignation," increasing the volume of emails in the months preceding his resignation. (*Id.* at 2, 6, 8, 12, 15.) Coach Elko identifies seven alleged trade secrets that Peters sent to his personal email. (*Id.* at 8-9.) These include (a) "Coach Elko's detailed service proposals to existing and prospective customers . . ."; (b) "service bids and financial proposals regarding services to be provided by Coach Elko to specific customers"; (c) "Coach Elko's financial information including monthly expenses"; (d) "regular confidential impact reports regarding the number and status of Coach Elko's driver employee population . . ."; (e) "Coach Elko's service contracts and other agreements with certain customers"; (f) "Coach Elko's internal operating plans and strategies . . ."; and (g) "Coach Elko's bus schedules for its customers." (*Id.*)

At the direction or with the approval of WTH Commercial, Peters also allegedly took a hard drive that contained confidential files about Coach Elko's operating procedures, pricing rates and strategies, profits and losses, and employee and customer contact information. (*Id.* at 9-10.) Peters resigned from Coach Elko in June 2021 and began working for WTH Commercial. (*Id.* at 8.) Coach Elko accuses Defendants of using

---

[3]On March 20, 2023, the Court issued an oral ruling dismissing Coach Elko's First Amended Complaint (ECF No. 51) for lack of personal jurisdiction over WTH Commercial's parent company, Wynne Transportation Holdings, under Federal Rule of Civil Procedure 12(b)(1). (ECF No. 71.) On April 5, 2023, Coach Elko filed this SAC naming only WTH Commercial and Peters as defendants. (ECF No. 72.)

Coach Elko's proprietary and confidential trade secrets, acquired through Peters, to poach Coach Elko's customers, and engage in unfair competition. (Id. at 3, 8, 10-11.) According to Coach Elko, WTH Commercial has already stolen one of its long-time customers, Customer One, and is currently soliciting other customers. (Id. at 3.)

WTH Commercial now moves to dismiss the five claims[4] alleged against it in the SAC (ECF No. 72) for insufficient pleading under Rule 12(b)(6): trade secret misappropriation under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 et seq., and Nevada's Uniform Trade Secrets Act ("NUTSA"), NRS §§ 600A.010 et seq. (claims 1 and 2); tortious interference with Coach Elko's prospective economic advantage and contractual relationships (claims 6 and 7); and consumer fraud in violation of the Nevada Deceptive Trade Practices Act ("NDTPA") (claim 8). (ECF No. 80.)

III. DISCUSSION

The Court addresses below Defendant's Motion as to each challenged claim. The Court then addresses whether it will grant Defendant leave to amend its NDTPA claim.

A. Federal and State Law Claims for Misappropriation of Trade Secrets

Coach Elko alleges in its first and second causes of action that Defendants misappropriated trade secrets in violation of the federal DTSA and the Nevada NUTSA. (ECF No. 72 at 11-16.) Courts have analyzed federal DTSA and state UTSA claims together. See InteliClear, LLC v. ETC Glob. Holdings, Inc., 978 F.3d 653, 657 (9th Cir. 2020) (finding that the elements of federal and state law trade secret claims are "substantially similar"). The Court accordingly does so here as well. To prevail on a trade secret misappropriation claim under the DTSA, the plaintiff must demonstrate "(1) that [they] possessed a trade secret, (2) that the defendant misappropriated the trade secret; and (3) that the misappropriation caused or threatened damage to the plaintiff." Id. at 657-58 (citing 18 U.S.C. § 1839(5)). To prevail on a trade secret misappropriation claim under

---

[4]Coach Elko alleges eight causes of action. Three of those claims are solely against Peters. (ECF No. 72 at 16-19.)

3

NUTSA, a plaintiff must show: "(1) a valuable trade secret; (2) misappropriation of the trade secret through use, disclosure, or nondisclosure of use of the trade secret; and (3) the requirement that the misappropriation be wrongful because it was made in breach of an express or implied contract or by a party with a duty not to disclose." *Frantz v. Johnson*, 999 P.2d 351, 358 (Nev. 2000). Both statutes thus similarly require that Plaintiffs show: (1) that a protectable trade secret exists; and (2) misappropriation of that trade secret. The Court addresses each requirement.

### 1. Identification of protectable trade secrets

Defendant argues that Coach Elko has failed to identify trade secrets with sufficient particularity in its SAC, instead relying merely on "catch all terms" and conclusory statements. (ECF Nos. 80 at 4-5, 88 at 1-2.) In response, Plaintiff argues that WTH Commercial attempts to "apply a heightened pleading standard" by imposing an excessively stringent particularity requirement at the motion to dismiss stage. (ECF No. 85 at 9-10.) The Court agrees with Coach Elko.

Both the DTSA and the NUTSA define trade secrets broadly. *See InteliClear*, 978 F.3d at 657 (citing *Forro Precision, Inc. v. Int'l Bus. Machines Corp.*, 673 F.2d 1045, 1057 (9th Cir. 1982)). A "trade secret" is "information, including, without limitation, a formula, pattern, compilation, program, device, method, technique, product, system, process, design, prototype, procedure, computer programming instruction or code" that (1) "Derives independent economic value" from being kept secret and is "not readily ascertainable through proper means"; and (2) "Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." NRS §§ 600A.030; 600A.010(5)(a); *see also* 18 U.S.C. §§ 1839(3), (5).

In its initial pleadings, a plaintiff must identify its trade secrets with "sufficient particularity . . . to permit the defendant to ascertain at least the boundaries within which the secret lies," and "to separate it from matters of general knowledge in the trade or of special knowledge of those persons . . . skilled in the trade." *Imax Corp. v. Cinema Techs.,*

*Inc.*, 152 F.3d 1161, 1164-65 (9th Cir. 1998) (quoting *Universal Analytics v. MacNeal–Schwendler Corp.*, 707 F. Supp. 1170, 1177 (C.D. Cal. 1989)); *see also Bombardier Inc. v. Mitsubishi Aircraft Corp.*, 383 F. Supp. 3d 1169, 1178 (W.D. Wash. 2019). A plaintiff must "clearly refer to tangible trade secret material instead of referring to a system which potentially qualifies for trade secret protection." *InteliClear*, 978 F.3d at 658. However, a plaintiff need not plead trade secrets with extensive detail beyond that required to put the defendant on notice of the boundaries of alleged secrets. *See T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F. Supp. 3d 1184, 1193 (W.D. Wash. 2015) ("[A] plaintiff should not be compelled to divulge with specificity all of its possible trade secrets . . . in order to proceed to discovery.") Moreover, requiring excessive specificity at the pleading stage risks exposing confidential information. *See RealD Spark LLC v. Microsoft Corp.*, Case No. 2:22-CV-00942-TL, 2023 WL 3304250, at *3 (W.D. Wash. May 8, 2023) (citing The Sedona Conference, Commentary on the Proper Identification of Asserted Trade Secrets in Misappropriation Cases, 22 Sedona Conf. J. 223, 248 (2021)). Rather, the specification of a trade secret may proceed as an "iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." *InteliClear*, 978 F.3d at 662.

Both parties cite extensively to *InteliClear*. (ECF. Nos. 80 at 3-4, 6, 85 at 5, 7-8, 88 at 2.) There, the Ninth Circuit clarified the timeline for particularizing trade secret identifications over the life of a case. *InteliClear* does not support WTH Commercial's argument that Coach Elko is obligated to plead with greater particularity. In fact, the *InteliClear* court reversed an order granting summary judgment to defendants after only a short period of discovery, finding that the plaintiff adequately identified potential trade secrets and that summary judgment after such limited opportunity for the plaintiff to obtain discovery was premature because "[a] reasonable jury could conclude that [the structures, methods, and technological designs in question] are protectable trade secrets." *InteliClear*, 928 F. 3d at 659.

Here, the Court finds that Coach Elko has pled protectable trade secrets with sufficient particularity. *See FSP, Inc. v. MJM Fantasy Sports LLC*, Case No. 2:11-CV-00747-RLH, 2011 WL 6256969, at *2 (D. Nev. Dec. 14, 2011) (denying the defendant's motion to dismiss complaint for failure to specifically identify the allege trade secrets at issue because "[t]hese issues may become important later in the case, but they are insufficient reason to warrant dismissal at the pleading stage."); *Marina Dist. Dev. Co., LLC v. AC Ocean Walk, LLC*, Case No. 2:20-CV-01592-GMN-BNW, 2020 WL 5502160, at *3 (D. Nev. Sept. 10, 2020) (concluding that "given the broad definition of trade secret, the Court does not find Plaintiff's failure to identify its trade secrets with particularity is fatal to Plaintiff's claim"). Indeed, the "determination of whether corporate information, such as customer and pricing information, is a trade secret is a question for the finder of fact." *Frantz*, 116 Nev. at 466. In Nevada, corporate information, including contracts, customer information, processes and pricing schemes, may qualify for trade secret protection where that information is "kept confidential." *See Quest Diagnostics Inc. v. Elarja*, Case No. 2:22-CV-00647-GMN-EJY, 2023 WL 172685, at *4 (D. Nev. Jan. 11, 2023) (quoting *Finkel v. Cashman Pro., Inc.*, 270 P.3d 1259, 1264 (Nev. 2012)). The Court acknowledges that merely listing general systems which "may" qualify for protection is insufficient, *see Loop AI Labs Inc. v. Gatti*, 195 F. Supp. 3d 1107, 1113-14 (N.D. Cal. 2016), and that Coach Elko's pleadings sometimes mirror this system language (for example, referring generally to "plans" (ECF No. 72 at 17)). But Coach Elko has adequately clarified and narrowed "catchall" terms and pointed to tangible potential secrets, the boundaries of which are ascertainable to Defendants and will be refined through discovery. *See Cisco Sys., Inc. v. Chung*, 462 F. Supp. 3d 1024, 1047 (N.D. Cal. 2020) (holding that while pleading mere broad categories of allegedly secret information fails to meet the 12(b)(6) standard, a complaint should not be dismissed when a plaintiff narrows these broad categories with additional details regarding scope). Plaintiff alleges that Defendants stole sets of documents, pricing structures, and plans tailored to *specific*

customers, not merely such records in the abstract. (ECF Nos. 72 at 8-9, 85 at 8-9.) Coach Elko refers to, *inter alia*: bids oriented to individual customers' needs; records which "illustrated the drivers Coach Elko had available at any given time and would demonstrate whether staffing shortage impacted business"; "sensitive information [including employment data] about 80 Coach Elko employees"; bus routes and schedules tailored to the local area; and "pricing formulas that Coach Elko developed through significant time and investment," also specific to the market of the area. (ECF No. 72 at 9, 11.)

Moreover, Coach Elko has pled sufficient facts to support that it gained economic advantage by virtue of the confidentiality of these alleged trade secrets and that this information was subject to reasonable efforts to maintain secrecy. Defendant argues that "information regarding current and prospective customers and bidding and marketing strategies" would be "publicly accessible or readily available to a competitor by simply seeking out and speaking with prospective customers in the area." (ECF No. 80 at 5.) Public knowledge "that is generally known in an industry cannot be a trade secret." *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984). But even where aspects of protected information are public, the information considered as a whole may nevertheless be protected. *See Nevada Indep. v. Whitley*, 506 P.3d 1037, 1045 (Nev. 2022) (finding that a manufacturer's pricing scheme merited trade secret protection even though identical pricing between manufacturers was part of the public record); *see also Mallet & Co., Inc. v. Lacayo,* 16 F.4th 364, 386 (3d Cir. 2021) ("[I]nformation will not necessarily be deprived of protection as a trade secret because parts of it are publicly available."); *Newmark Grp., Inc. v. Avison Young (Canada) Inc.*, Case No. 2:15-CV-00531-RFB-GWF, 2018 WL 5886531, at *3 (D. Nev. Nov. 9, 2018) ("A customer list may be entitled to trade secret protection when it represents a selective accumulation of detailed, valuable information…") (quoting *Calisi v. Unified Financial Services, LLC*, 302 P.3d 628, 631 (Ariz. App. 2013)).

The Court is not convinced that Coach Elko's alleged trade secrets are "readily accessible" by competitors or amount to public knowledge. Some of the information in question—for example, pricing formulas and arrangements for specific customers—is semi-technical and plausibly complex, given that Coach Elko operates dozens of buses and employs more than one hundred people. (ECF No. 72 at 6.) A corporation may gain "an economic advantage over others," furthermore, "by becoming privy to their costs and expenses during production and marketing." *Nevada Indep.*, 506 P.3d at 1045. Coach Elko is not stripped of all potential trade secret protection at the outset merely because a competitor could conceivably – but only with significant time, effort, and expenditure – piece together an imperfect approximation of those secrets. And Defendant does not dispute that the information in question was subject to a valid confidentiality agreement. (ECF No. 80 at 7.) *See also Quest Diagnostics*, 2023 WL 172685, at *5 (finding that valid confidentiality agreements indicate sufficient effort to keep information secret).

Finally, WTH Commercial argues in its reply that Coach Elko's allegations "contain non-exhaustive, and therefore unlimited, lists of potential trade secrets" and thus provide inadequate notice to Defendant. (ECF No. 88 at 3.) But in *InteliClear*, the Ninth Circuit rejected the district court's concern about expanding identifications and expressly noted that "[a]t [the summary judgment] stage, particularly where no discovery whatsoever had occurred, it is not fatal to [the plaintiff's] claim that its hedging language left open the possibility of expanding its identifications later" because "[the plaintiff]'s burden is only to identify at least one trade secret with sufficient particularity to create a triable issue." 978 F.3d at 659. Here, at the motion to dismiss stage, where Plaintiff has referred to specific, potentially protectable documents sent in specific emails, Plaintiff has met its burden.

### 2. Misappropriation of trade secrets

The Court next considers whether Coach Elko has pled facts demonstrating acquisition or use of trade secrets through improper means. Coach Elko argues that it alleges WTH Commercial's *direct* participation in stealing confidential information from

Coach Elko. (ECF No. 85 at 9.) WTH Commercial argues that Coach Elko accuses it of indirect misappropriation and that it has not shown that WTH Commercial—as opposed to Corey Peters—used improper means to acquire or use trade secrets. (ECF Nos. 80 at 6-7, 88 at 4.) The Court agrees with Coach Elko.

A misappropriation claim under the DTSA or NUTSA requires a showing of acquisition or disclosure by "improper means." *See* NRS § 600A.030(2)(a) (defining misappropriation as the "[a]quisition of a trade secret of another by a person by improper means"); 18 U.S.C. § 1839(5)(A) (defining misappropriation as the "acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means"). "Improper means" include "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means." 18 U.S.C. § 1839(6)(A).

"Indirect" misappropriation is the "[a]quisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means" or "[d]isclosure or use of a trade secret of another without express or implied consent by a person who: (1) Used improper means to acquire knowledge of the trade secret; (2) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was" derived through improper means, acquired under circumstances demanding secrecy, or derived through a person who owed a duty to plaintiff to maintain secrecy. NRS § 600A.030.

Coach Elko alleges that around March 2021, Peters "began conspiring and/or working with [WTH Commercial] to acquire and use, without authorization, Coach Elko's confidential and proprietary information and trade secrets." (ECF No. 72 at 8.) WTH Commercial argues that this allegation is "unsupported by any further factual allegations in the Complaint" and is undermined by Coach Elko's allegations that Peters sent proprietary information to his personal account for nearly two years before his contact with WTH Commercial. (ECF Nos. 80 at 6 n.1, 88 at 3-4)

But the Court finds sufficiently persuasive Coach Elko's response that it need not provide a complete step-by-step explanation for how WTH Commercial instructed Peters to steal confidential information in order to support a reasonable inference that it directed that acquisition, particularly when the Court must construe all reasonable inferences in Plaintiff's favor at this stage. (ECF No. 85 at 9-10.) Throughout the SAC, Plaintiff specifically alleges that: (1) WTH Commercial began to communicate with Corey Peters in 2021, after interpersonal conflicts with another employee led Peters to seek to "get even" with Coach Elko" (ECF No. 72 at 8); (2) Peters sent confidential information to his personal email over multiple years (*Id.*); (3) WTH Commercial entered into an agreement with Peters to steal confidential information (*Id.* at 2, 12, 15, 20); (4) in the 60 days before his resignation and after his relationship with WTH Commercial began—per  per the timeline suggested in the SAC—Peters increased the volume of emails he sent to his personal account, sending more than 40 documents to himself in his final six weeks (*Id.* at 8); (5) Peters began to work as an executive at WTH Commercial with the confidential information he acquired in his possession (*Id.*); and (6) WTH Commercial specifically targeted Coach Elko's customer base by contacting them and pressuring them to switch providers, using confidential information about those customers (*Id.* at 10-11). While the Court acknowledges that these allegations are not factually robust, taken together, they cross the line beyond mere "speculation" to support the reasonable inference that WTH Commercial plausibly induced Peters' actions in breach of a duty of confidentiality. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007) (holding that a court must make reasonable inferences).

WTH Commercial further argues that Coach Elko failed to allege facts giving rise to an inference of improper means because it is accused of "indirect" misappropriation, through Peters. (ECF No. 80 at 6.) Defendant argues that Coach Elko has failed to meet the associated requirement that "plaintiff must allege facts to show that the defendant knew or had reason to know…that the disclosing party had acquired [information] through

improper means or was breaching a duty of confidentiality by disclos[ure]." *Heller v. Cepia, L.L.C.*, Case No. C 11-01146 JSW, 2012 WL 13572, at *6 (N.D. Cal. Jan. 4, 2012). Because Plaintiff alleges facts sufficient to support WTH Commercial's direct involvement in the alleged misappropriation, the Court finds that much of Defendant's argument regarding the inevitable disclosure doctrine is not applicable. Even accepting that a plaintiff may not rely on any inference that a former employee *inevitably* discloses secrets in its possession to its new employers, *see Pellerin v. Honeywell International, Inc.*, 877 F. Supp. 2d 983, 988-89 (S.D. Cal. 2012), here Plaintiff alleges a purposeful, *mutually-agreed-upon* acquisition followed by disclosure. (ECF No. 85 at 9-10.)[5]

Coach Elko has alleged facts sufficient to support reasonable inferences both that: (1) the confidential information described in the SAC contains trade secrets; and (2) that those secrets were plausibly misappropriated by Defendant. The Court therefore denies WTH Commercial's Motion as to claims 1 and 2.

///

///

///

---

[5] In addition, however, even if the Court accepts Defendant's argument that Coach Elko has not successfully pled facts suggesting that WTH Commercial directed Peters' initial misappropriation, circumstantial factual allegations may support an inference that a defendant knew or had reason to know that confidential information was wrongfully acquired by a new third-party employee. *See Pellerin*, 877 F. Supp. 2d at 990. In *Pellerin*, the court found no such circumstantial allegations because the plaintiff alleged merely that the former employee voluntarily quit, possessed trade secrets, and then began similar employment at a competitor. *See id.* Here, at the least, Plaintiff alleges that Defendants began a relationship *before* Peters left Coach Elko, and that after the beginning of this relationship, Peters increased the volume of emails sent to his personal account. (ECF No. 72 at 8.) *See also SOAProjects, Inc. v. SCM Microsystems, Inc.*, Case No. 10-CV-01773-LHK, 2010 WL 5069832, at *11 (N.D. Cal. Dec. 7, 2010) (finding adequate circumstantial evidence including a prior relationship). Again, while these factual allegations are sparse, they support an inference that WTH Commercial knew or should have known that information later used in its business was improperly acquired and acquired by an individual with a duty of confidentiality. *See* NRS § 600A.030. The Court is not persuaded by Defendant's argument that WTH Commercial had no reason to know the contours of Coach Elko's confidentiality policy, given that the policy is relatively standard, and the alleged trade secrets are the type of information that Coach Elko would not voluntarily disclose.

### B. State Law Tort Claims

#### 1. Preemption under NUTSA

Plaintiff asserts claims for tortious interference with prospective economic advantage (claim 6), tortious interference with contractual relationships (claim 7), and consumer fraud in violation of the NDTPA (claim 8). (ECF No. 72 at 19-22.) As a threshold matter, Defendant argues that Coach Elko's misappropriation of trade secrets claim under NUTSA preempts these tort-based claims, because all claims arise under the same nucleus of fact. (ECF No. 80 at 9-10.) Coach Elko responds that Plaintiff is entitled to plead alternative theories of relief under Federal Rule of Civil Procedure 8. (ECF No. 85 at 10-11.) The Court again agrees with Coach Elko.

Here, Defendant relies on caselaw interpreting California, Hawaii, and Utah's trade secret statutes. (ECF No. 80 at 9.) Defendant also relies on *Hutchison v. KFC Corp.*, 809 F. Supp. 68 (D. Nev. 1992), a 1992 case from this District granting a defendant's motion to dismiss common-law tort claims on the basis that the state UTSA preempts these duplicative forms of relief. (ECF No. 80 at 10.) *See also Hutchison*, 809 F. Supp. at 71. As Plaintiff notes, however, Nevada federal courts have recently moved away from the holding in *Hutchison* and have declined to dismiss for failure to state a claim where there is possible UTSA preemption. (ECF No. 85 at 11.) In *ImageKeeper LLC v. Wright Nat'l Flood Ins. Servs. LLC*, Case No. 2:20-CV-01470-GMN-VCF, 2021 WL 4466312 (D. Nev. Sept. 29, 2021), the court held that a plaintiff was entitled to plead both UTSA claims and tort claims, finding that the *Hutchinson* court failed to consider the requirements of Federal Rule of Civil Procedure 8. *See id.* at *4-*5. Rule 8(d) permits a party to "set out two or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Dismissing claims as preempted is premature at the pleading stage. *See id.* at *4; see also Montgomery v. eTreppid Techs., LLC*, Case No. 306-CV-00056-PMPVPC, 2008 WL 942524, at *3 (D. Nev. Apr. 7, 2008) ("Even if any of the above claims are duplicative of the misappropriation of trade secrets claim and

therefore preempted by the Nevada Unfair Trade Secrets Act, [the plaintiff] is entitled to plead the claims in the alternative under Rule 8.").

Dismissal on the basis of NUTSA preemption is similarly premature at the current stage in this case. Plaintiff is entitled to plead alternative statutory and non-statutory theories of relief even when those theories are duplicative. The Court thus proceeds to consider whether Plaintiff adequately pleads its tort claims.

### 2. Tortious interference with prospective economic advantage and contractual relationships (claims 6 and 7)

WTH Commercial argues that Coach Elko has failed to state a claim for tortious interference with prospective economic advantage and contractual relationships, even if NUTSA preemption does not apply. (ECF No. 80 at 10.)

In order to prevail on a claim for wrongful interference with prospective economic advantage, a plaintiff must show: (1) a prospective contractual relationship between the plaintiff and a third party; (2) the defendant's knowledge of this prospective relationship; (3) the intent to harm the plaintiff by preventing the relationship; (4) the absence of privilege or justification by the defendant; and (5) actual harm to the plaintiff as a result of the defendant's conduct. *See In re Amerco Deriv. Litig.*, 252 P.3d 681, 702 (Nev. 2011) (citation omitted). And in order to prevail on a claim for tortious interference with contract, a plaintiff must demonstrate: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (4) resulting damage. *See J.J. Indus., LLC v. Bennet,* 71 P.3d 1264, 1267 (Nev. 2003).

First, WTH Commercial argues that Plaintiff fails to allege any intentional acts targeted to disrupt current or prospective contracts, and that "contacting current Coach Elko customers and pressuring them to move their business to defendants" amounts to ordinary competitive business activity. (ECF No. 80 at 10-11.) Defendant further states that there are no facts indicating that it "intended…to directly harm Coach Elko, rather

than [conclusory] allegations that are more aligned with WTH Commercial merely trying to secure its own business." (*Id.*) This argument, however, is undermined by the crux of Coach Elko's factual claims in the SAC—that WTH Commercial and Peters willfully acquired and used confidential trade secrets to intentionally "interfere with and disrupt Coach Elko's goodwill, business relations, and contracts including current and prospective Coach Elko customers." (ECF Nos. 72 at 3, 85 at 12.) The SAC's numerous references to the intentional misuse of competitor trade secrets—including, by inference, by plausibly approaching current and prospective customers with hidden knowledge of those customers' bottom-line cost breakdowns—points to the requisite intent to cause harm to Coach Elko. (ECF No. 72 at 3, 6-11.) Coach Elko also alleges that one long-time customer (Customer One) moved its business to WTH Commercial after "Defendants used and/or relied on Coach Elko's confidential and proprietary information and trade secrets to undercut Coach Elko's pricing and relationship with customer," and that this activity has caused harm to relationships with prospective customers as well. (*Id.* at 19-20.) Coach Elko also alleges that WTH Commercial has solicited prospective customers with "false information" about Plaintiff. (*Id.* at 20.) If the Court takes these allegations as true, which it must in resolving the Motion, this amounts to more than ordinary business activity.

Similarly, Defendant argues that Coach Elko fails to allege that WTH Commercial's actions were not privileged. (ECF No. 80 at 11-12.) A competitor is privileged to divert business to itself by all fair and reasonable means. *See Custom Teleconnect, Inc. v. Int'l Tele-Servs., Inc.*, 254 F. Supp. 2d 1173, 1181 (D. Nev. 2003). Here, again, Defendant skirts over the most important factual allegations in the SA—the allegations suggesting that WTH Commercial undercut current and prospective business relationships through *unfair* means by utilizing secret and false information. (ECF No. 72 at 3, 6-11.)

Finally, relevant to Plaintiff's interference with contract claim, WTH Commercial argues that Coach Elko fails to plead damages resulting from purported interference and

also fails to plead that an actual breach of contract occurred. (ECF No. 80 at 11.) Regarding Plaintiff's allegation that Customer One took its business to WTH Commercial, Defendant emphasizes that Coach Elko's agreement with Customer One was not exclusive and that Customer One was free to terminate its contract with Coach Elko and choose a preferred business. (*Id.*). *See also, e.g.*, *Radiology Prof'l Corp. v. Trinidad Area Health Ass'n*, 577 P.2d 748, 751 (Colo. 1978) ("The petitioner cannot recover for the alleged tortious interference with a contract because the agreement was nonexclusive in nature and had not been breached.")

This presents a close question, because Coach Elko only alleges that Defendants caused one identified "long-time customer to terminate its contract" and that "Defendants intentionally cause[d] the breach or termination of said contractual relationships." (ECF No. 72 at 19, 21.) Defendant does not plead additional details about the nature of any breach. In Nevada, however, "[t]he interference with contract tort 'has expanded to permit liability where the defendant does not literally induce a breach of contract, but makes plaintiff's performance of the contract more expensive or burdensome.'" *Allstate Ins. Co. v. Shah*, Case No. 2:15-CV-01786-APG-DJA, 2023 WL 5613493, at *3 (D. Nev. July 17, 2023) (quoting *Ramona Manor Convalescent Hosp. v. Care Enters.*, 177 Cal. App. 3d 1120, 1131 (Ct. App. 1986)). Plaintiff has alleged six-figure losses alongside the loss of Customer One. (ECF No. 72 at 3.) Because WTH Commercial's alleged conduct includes using false and trade secret information, knowingly obtained in breach of Peters' obligations to Coach Elko, to induce termination of an existing contract—and by implication to make attempted retention and performance of that contract more expensive—the Court finds that Plaintiff has adequately pled actual disruption and damages.

Plaintiff's tortious interference claims generally rest on proving similar wrongful conduct—WTH Commercial's knowing acquisition or use of Coach Elko's secret information—as its trade secret misappropriation claims. The Court agrees with Coach

Elko that WTH Commercial's arguments are better reserved for the fact-specific summary judgment stage. (ECF No. 85 at 13.) *See also Dunlap v. Nevin*, Case No. 2:12-cv-1370-JCM-VCF, 2014 U.S. Dist. LEXIS 89151, *21 (D. Nev. Mar. 10, 2014). The Court therefore denies Defendant's Motion as to claims 6 and 7.

### 3.   Consumer fraud in violation of the NDTPA (claim 8)

Defendant also asks the Court to dismiss Coach Elko's NDTPA claim, even if the claim is not preempted under NUTSA. (ECF Nos. 80 at 12-15, 88 at 5-6.) WTH Commercial argues that Coach Elko has made only conclusory allegations—with no details regarding time, place or content—about purported false misrepresentations, the basis of its NDTPA claim. (*Id.* at 13-14.) Second, Defendant argues that WTH Commercial has failed to plead causation and damages. (*Id.* at 14-15.) Coach Elko argues in response that WTH Commercial again incorrectly attempts to apply a heightened pleading standard. (ECF No. 85 at 13-14.) Here, however, a heightened pleading standard under Federal Rule of Civil Procedure 9(b) is proper. WTH Commercial does not directly argue that a consumer fraud claim is subject to Rule 9(b), but the Court finds that Rule 9 nevertheless applies and agrees with WTH Commercial that Plaintiff fails to sufficiently plead its NDTPA claim with particularity.

Under the NDTPA, a person or business engages in a "deceptive trade practice" if they "knowingly make[] a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease." NRS § 598.0915(2). Such a deceptive trade practice can form the basis of a private right of action for "any person who is a victim of consumer fraud." NRS §§ 41.600(1), (2)(e); *see also Sears v. Russell Road Food & Bev., LLC*, 460 F. Supp. 3d 1065, 1070 (D. Nev. 2020); *Nev. Power Co. v. Eighth Jud. Dist. Ct.*, 102 P.3d 578, 583 n.7 (Nev. 2004) (per curiam). WTH Commercial notes that the Nevada Supreme Court has not specified the elements of an NDTPA claim. (ECF No. 80 at 13.) However, courts in this District have analyzed the Nevada Supreme Court's probable interpretation of the statute and have found that a plaintiff must allege "that (1)

an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff." *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009); *see also Manley v. MGM Resorts Int'l*, Case No. 2:22-CV-01906-MMD-DJA, 2023 WL 3737509, at *5 (D. Nev. May 30, 2023). Plaintiff does not contest that causation and damages are required elements in an NDTPA claim.

WTH Commercial first argues that Coach Elko has failed to plead any deceptive trade practices. While Defendant does not directly argue that a heightened pleading standard applies, courts—including this Court—have applied Federal Rule of Civil Procedure Rule 9(b)'s heightened standard to NDTPA claims because these claims "sound[] in fraud." *See id.* at *6; *Motogolf.com, LLC v. Top Shelf Golf*, LLC, 528 F. Supp. 3d 1168, 1174 (D. Nev. 2021) (applying Rule 9(b) to plaintiff's NDTPA claim); *Martinez v. MXI Corp*, Case No. 3:15-cv-00243-MMD-VPC, 2016 WL 951430, at *5 (D. Nev. Mar. 9, 2016) (determining that "Rule 9(b) governs a consumer fraud claim").

Rule 9(b) "applies where a plaintiff alleges fraud," *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011), and requires a plaintiff to "state with particularity the circumstances constituting fraud," Fed. R. Civ. P. 9(b). Under Rule 9(b), a plaintiff must provide the "who, what, when, where, and how" of the alleged fraudulent misconduct. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). This requires "more than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Id.* (citation and quotations omitted). As WTH Commercial notes, in consumer fraud cases under the NDTPA, a plaintiff must detail the "time, place, and content of any representations" that violate the statute. *See Shelsinger v. Bank of Am., N.A.*, Case No. 2:11-cv-2020-PMP-PAL, 2012 US. Dist. LEXIS 102030, at *16-*17, 2012 WL 2995698, at *6 (D. Nev. July 23, 2012) (citation omitted).

Coach Elko alleges that Defendants have violated the NDTPA by "knowingly making false representations regarding their services, their intellectual property rights,

and their affiliations," (ECF No. 72 at 22), and that Defendants "are using deceptive representations in connection with Defendants' actual or planned services for sale including that Coach Elko approves of or has given permission for defendants to operate using its confidential information and trade secrets," (*id.* at 21). But Coach Elko fails to provide adequate information about the "time, place, or content" of such false statements. The range of trade secrets encompassed in the emails Peters sent to his personal account is broad, and these secrets could be utilized in numerous ways to falsely represent services and intellectual property information. There are no allegations as to when or where such misrepresentations were made—or even to which customers, besides Customer One. WTH Commercial's repeated argument here that the complaint inadequately alleges trade secrets (ECF No. 80 at 14)—and Coach Elko's argument in response that the "overall theory of the case" supports deceptive trade practices (ECF No. 85 at 13)—are not persuasive, because the pleading standard for claims 1 and 2 is less stringent.

Considering these deficiencies in the SAC, the Court grants Defendant's Motion as to the NDTPA claim and declines to reach Defendant's arguments that Coach Elko failed to adequately plead causation and damages. The NDTPA claim is therefore dismissed without prejudice.

### C.    Leave to Amend

Plaintiff requests leave to amend if the Court dismisses any of its claims. (ECF No. 85 at 14-16.) The Court has discretion to grant leave to amend and should freely do so "when justice so requires." Fed. R. Civ. P. 15(a); *see also Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). Nonetheless, the Court may deny leave to amend if it will cause: (1) undue delay; (2) undue prejudice to the opposing party; (3) the request is made in bad faith; (4) the party has repeatedly failed to cure deficiencies; or (5) the amendment would be futile. *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Although Coach Elko has previously amended its complaint, amendment is unlikely to be futile or cause undue delay or prejudice. This is the first time the sufficiency of Plaintiff's NDTPA allegations are before the Court. The Court thus finds leave to amend appropriate with respect to Coach Elko's NDTPA claim. Coach Elko must file its third amended complaint containing amended allegations against Defendants within 15 days. If Coach Elko does not timely amend, the Court will dismiss Coach Elko's NDTPA claim with prejudice and Coach Elko may proceed on the other claims in the SAC.

## IV.  CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that WTH Commercial's motion to dismiss (ECF No. 80) is granted in part and denied in part. The motion to dismiss is granted with respect to the Nevada Deceptive Trade Practices Claim (Claim 8). The motion is denied as to all other claims.

It is further ordered that Coach Elko may file an amended complaint within 15 days to assert its NDTPA claim if it is able to cure the deficiencies identified in this order. Failure to timely file an amended complaint will result in dismissal of the consumer fraud claim with prejudice. If Coach Elko chooses not to amend its SAC, it must file a notice with the Court stating as such within 15 days as well.

DATED THIS 20th Day of September.

MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE